ULSTER GENERAL TERM, June, 1848. *Harris, Watson, and Parker,* Justices.

## KROM *vs.* SCHOONMAKER.

A lunatic cannot be punished for crime, but he may be sued for an injury done to another. He is not a free agent, capable of intelligent voluntary action, and therefore is incapable of a *guilty intent*, which is the very essence of crime; but a civil action, to recover damages for an injury, may be maintained against him, because the *intent* with which the action is done is not material.

The principle upon which this distinction rests reaches also to the measure of damages in a civil action. Ordinarily, in an action for a personal injury, the damages are graduated by the intent of the party committing the injury. But where the defendant is a lunatic, as he has properly no will, the only correct measure of damages is the mere compensation of the party injured.

In an action against a justice, for false imprisonment in issuing a warrant for the arrest of the plaintiff upon a criminal charge, without any complaint having been made, where the defence is the *insanity* of the defendant at the time he issued the warrant, the fact that the plaintiff had applied to a justice for the confinement of the defendant as a lunatic, and had founded that application upon the circumstances of his own arrest on the warrant issued by the defendant, is strong, if not conclusive, evidence of the defendant's insanity; in the absence of all proof to show that the plaintiff was in fact mistaken, at the time he made the application.

In such a case, the jury should be instructed that they have the right at least, to take the plaintiff's judgment as to the state of the defendant's mind, as conclusive against him, until he shall himself show that he was mistaken in his opinion.

The power of the court to award a new trial ought to be cautiously exercised, when the error complained of relates only to the amount of damages.

THIS was an action for false imprisonment, tried before Mr. Justice Willard at the Ulster circuit, in September, 1847. It

appeared upon the trial that the defendant was a justice of the peace of the town of Rochester, and, as such justice, on the 4th day of January, 1847, issued a warrant in the following words:

" Ulster county, ss.    To any *county* of said county, greeting: In the name of the people of the state of New-York, you are hereby commanded to take the body of Solomon J. Krom, and bring him before me forthwith, to answer said people in a complaint of perjury said to have happened in the court of common pleas and general sessions, at its last session at the court house in Kingston in said county.    Given under my hand this 4th day of January, 1847.      JOHN D. SCHOONMAKER."

The warrant was issued without any complaint being made, and delivered to one Frost, a constable, by whom the plaintiff was arrested, and on the same evening brought before the defendant. At the plaintiff's request the examination was adjourned until the next morning at Moses J. Schoonmaker's tavern. The defendant told Frost to keep the plaintiff in custody. After they left the defendant's house the constable allowed the plaintiff to go home, upon his promise to meet him at Schoonmaker's the next morning. The next day the plaintiff, with one Wyckoff, his counsel, went to Schoonmaker's tavern and met the constable there, but the defendant did not come. The plaintiff was not released by the constable until sundown that day. It was proved on the part of the defendant that when the plaintiff was brought before him on the warrant, his son told him *"there was no use in minding Schoonmaker, as he was crazy and did not know what he was about."* It was also proved that for nearly a year the defendant had confined himself to his room, allowing no person whatever to see him. One Westbrook, another justice of the same town, testified that two or three days after the warrant was issued, the plaintiff and his son applied to him and stated that they wanted to take proceedings against Schoonmaker *" under the statute of lunacy ;"* that they did not consider it safe for him to go at large, from the way he acted ; he was mischievous and crazy, or something*.* Accordingly an examination was had

before two justices. The plaintiff was the first witness examined, and as evidence of the defendant's insanity, he related the circumstances connected with his arrest upon the warrant for perjury. He stated in particular what occurred when he was brought before the defendant. When asked what the warrant had been issued for, he said it was for perjury; that plaintiff had sworn false on the trial of Bell and De Puy, and had sworn false by the wholesale; that it was the fifth time he had sworn false; that either the plaintiff or the defendant had sworn false, and one of them must go to state prison: he said he was not going to *shoot himself* until he had all those damned perjured rascals where they ought to be; that when plaintiff asked him if he could give bail, he said he wanted bail for $20,000; and upon being told by the plaintiff he would give it, he said he must give $30,000: he was told he could have that, and then he said he would not take that; that money would not save him. When he consented to adjourn the examination until the next morning, he said he was going to have *all the judges* there. After the adjournment he directed the constable *to take charge of the prisoner.* The constable hesitated, and he said "damn you constable, do you not know your business?" He then called one Marble, who was not a constable, and said to him, "You have been constable long enough, you know your business." When asked who had made the complaint, he said it was R. H. De Puy; De Puy, being present, denied it. Then he said he was the complainant himself. Several other witnesses were examined before the justices, who proved various acts of the defendant, about the time the warrant was issued, evincing a disordered mind. The examination of the witnesses before the justices was read upon the trial, without objection.

The court charged the jury that the warrant was not a protection to the defendant, because no complaint was shown; but that, in order to justify a verdict for more than actual damages, the jury must be satisfied that at the time of issuing the warrant the defendant was of a sane mind; that sanity was to be presumed until insanity was proved, and that the jury must determine from the evidence whether the defendant was sane

or insane. The jury found a verdict for the plaintiff for $350. The defendant moved for a new trial upon a case.

*M. Schoonmaker,* for the plaintiff.

*T. R. Westbrook,* for the defendant.

*By the Court,* HARRIS, J. A lunatic cannot be punished for crime, but he may be sued for an injury done to another. He is not a free agent, capable of intelligent, voluntary action, and therefore is incapable of a *guilty intent,* which is the very essence of crime; but a civil action, to recover damages for an injury, may be maintained against him, because the *intent* with which the act is done is not material. But the principle upon which this distinction rests reaches also to the measure of damages in a civil action. Ordinarily, in an action for a personal injury, the amount of damages is, at least to a considerable extent, governed by the motive which influenced the party in committing the act. Thus it is usual, and as proper as it is usual, for the court, upon the trial of an action for an assault and battery, to instruct the jury that the action is maintainable even though the injury was accidental; that if intentional, yet when the act is done under the excitement of strong provocation, it is a proper ground for the mitigation of damages. And, on the contrary, that when the act is committed deliberately or maliciously, it is good ground for increasing damages. In short, in such cases, the damages are graduated by the intent of the party committing the injury. But in respect to the lunatic, as he has properly no will, it follows that the only proper measure of damages in an action against him for a wrong, is the mere compensation of the party injured. The charge of the learned judge, upon the trial, was therefore, in this respect, entirely correct.

But I think sufficient weight was not given, either by the judge or the jury, to the fact that the plaintiff himself, immediately after he was discharged from arrest upon the warrant against him, made application, according to the provisions of

Krom *v.* Schoonmaker.

the act in relation to the safe keeping and care of lunatics, (1 *R. S.* 635, § 8,) for a warrant to apprehend and confine the defendant, as a lunatic. The judge charged the jury that, as a general rule, sanity is to be presumed until the contrary is made to appear. So far, perhaps, the charge was correct, but I think he should have further instructed the jury that the fact that the plaintiff had, at the time, made application for the confinement of the defendant as a lunatic, and had founded that application upon the circumstances of his own arrest upon the warrant issued by the defendant, was strong, if not conclusive, evidence of the defendant's insanity, in the absence of all proof to show that the plaintiff was in fact mistaken, or even thought he was mistaken, when he made the application. The fact that the plaintiff, and as it would seem, all who had any knowledge of the proceedings against the plaintiff for perjury, believed those proceedings to have been the result of the defendant's insanity, was not, I think, sufficiently considered. The jury should have been instructed that they had the right at least, to take the plaintiff's judgment as to the state of the defendant's mind, as conclusive against him, until he should himself show that he had been mistaken in his opinion. There was no such evidence, and from the facts and circumstances detailed in the case, I think I should have come to the same conclusion that the plaintiff did, that the issuing of the warrant was but the freak of a madman. The power of the court to award a new trial ought to be cautiously exercised when the error complained of relates only to the amount of damages; but under all the circumstances of this case, and taking into consideration the novelty of the defence, I think it is one of those cases in which a due regard to the ends of justice and a discreet exercise of the power of the court, fully warrants us in directing that the cause should be submitted to another jury.

New trial granted.