PAUL WILLIAMS, Appellant, *v.* WILLIAM HAYS, Respondent.

An insane person is liable for his torts the same as a sane person, except for those torts in which malice and, therefore, intention, is a necessary ingredient.

In respect to this liability there is no distinction between torts of non-feasance and of misfeasance, and so an insane person is liable for injuries caused by his tortious negligence, and so far as this liability is concerned, is held to the same degree of care and diligence as a person of sound mind.

Where one of several joint owners of a vessel by contract with the others, takes the vessel to sail it on shares, he to man her, to pay the crew, furnish supplies and have the absolute control and management thereof, he is in no sense the agent of his co-owners, but is the owner of the vessel *pro hac vice.*

Where the vessel is lost through the negligence of such an owner, he is liable to his co-owners for the loss.

*Moody* v. *Buck* (1 Sandf. 304), distinguished and disapproved.

In an action to recover for the loss of a vessel, alleged to have been caused by defendant's negligence, these facts appeared: Defendant, who was one of several joint owners of the vessel, he owning a minority interest, was sailing her under a contract with his co-owners as above specified ; she encountered storms, and defendant for more than two days was constantly on duty; then becoming exhausted he went to his cabin, leaving the vessel in charge of the mate and crew. The mate found the rudder broken and useless; he caused defendant to come on deck, but the latter refused to believe the vessel was in any trouble and refused the help of tugs whose services were offered, the masters of which told him the vessel was drifting on shore. She did drift on shore in the daytime without any effort on the part of defendant or any of his crew to save her and she became a total loss. Defendant testified that from the time he came into his cabin until he found himself on shore he was unconscious and knew nothing that had occured. The case was submitted to the jury on the theory that defendant, if sane, was guilty of negligence, but if

insane was not responsible for the loss.  *Held,* error; that, at least, unless it appeared that defendant had become insane solely on account of his efforts to save the vessel during the storm, he was chargeable with the consequences of his negligence.

As to whether, even in such a case, he would not be liable for the negligence of his servants, the mate and crew, *quære.*

*Hays* v. *Phenix Ins. Co.* (25 J. & S. 199; affd., 127 N. Y. 656), distinguished.

The authorities on the subject of the liability of insane persons for torts collated.

(Argued April 26, 1894; decided November 2, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 18, 1892, which affirmed a judgment in favor of defendant entered upon a verdict and affirmed an order denying a motion for a new trial, and also affirmed an order denying a motion for a re-argument.

This action was brought by plaintiff, as assignee of the Phœnix Insurance Company, to recover the sum of $893.89, paid to the firm of Parsons & Loud, as owners of one-sixteenth of a vessel, upon a policy of insurance issued by the Phœnix Insurance Company to said firm.

The facts, so far as material, are stated in the opinion.

*George A. Black* for appellant.  Defendant was either the bailee of the vessel (as charterer) or their servant (as master) or both; and in either relation he was liable for his own negligence or the negligence of the crew in caring for their property. (*Webb* v. *Pierce,* 1 Curtis, 113; 3 Sumn. 146; *Thorp* v. *Hammond,* 12 Wall. 416; *Somers* v. *White,* 65 Maine, 542; *Quinn* v. *C. E. C. Co.,* 46 Fed. Rep. 506; Story on Agency, §§ 116, 314; Emerigon on Ins. chap. 12, § 4 [Meredith's translation], 279; Id. chap. 7, § 5, 154.)  The insurance company acquired by subrogation all the rights of Parsons & Loud, and stood in their shoes. (*C. F. Ins. Co.* v. *E. R. Co.,* 73 N. Y. 399; *Mobile, etc., R. Co.* v. *Jurey,* 111 U. S. 594.)  The plaintiff proved the willful destruction of the vessel by allowing her to drive on shore — an act without excuse or justification, and for which no shadow of excuse is

·offered. (*Bazin* v. *S. S. Co.*, 3 Wall. Pr. 239; *Richlieu* v. *Ins. Co.*, 136 U. S. 423.) Proof of the highest order that ·defendant was insane would not discharge his liability to the plaintiff for the destruction of the property of Par- ·sons & Loud, and, therefore, such proof was irrelevant. (*Madin* v. *Devlin*, 132 Mass. 87; *Morse* v. *Crawford*, 17 Vt. ·499; *McIntyre* v. *Sholty*, 121 Ill. 660.) It was the duty of the trial court to direct a verdict. (*Tebo* v. *Jordan*, 62 Hun, 515.) The court should have set aside the verdict as against the evidence. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. ·356; *Dwight* v. *G. Ins. Co.*, 103 id. 558; *Bulger* v. *Rosa*, 119 id. 464; *Hall* v. *Stevens*, 116 id. 210.)

*William W. Goodrich* for respondent. Neither the mas- ·ter nor the ship is liable for a wreck growing out of the ·sudden disability of the master. (*Hays* v. *P. Ins. Co.*, 127 N. Y. 656; *Copeland* v. *M. Ins. Co.*, 2 Metc. 433; *Hamilton* v. *Pardox*, L. R. [12 App. Cas.] 518.) The defendant is not liable because the mate did not assume command of the ship. ·(*Hays* v. *P. Ins. Co.*, 127 N. Y. 56.)

EARL, J. The defendant and others, among whom were Parsons and Loud, were joint owners of the brig "Sheldon." By an arrangement between the defendant and the other ·owners he took the vessel to sail on shares. He was to man ·the vessel, to pay the crew and to furnish the supplies, and he was to have one-half of her earnings, after certain deduc- ·tions, for his share, and the other owners were to have from him the other half, after certain deductions, for their share. He was to have the absolute control and management of the vessel, and became her owner *pro hac vice*. (*Webb* v. *Pierce*, 1 Curt. 113; *Thorp* v. *Hammond*, 12 Wall. 416; ·*Somes* v. *White*, 65 Me. 542.) The defendant, under ·the arrangement between him and the other owners, in no ·sense became their agent or servant. In *Webb* v. *Pierce* it was held that where a master hires a vessel on shares under an agreement to victual and man her, and employ her on such ·voyages as he thinks best, having thereby the entire possession,

command and navigation of her, he thereby becomes her owner·
*pro hac vice*, and the relation of principal and agent does not
exist between him and the owners. The other cases are to
the same effect. The defendant thus became the charterer or
lessee of the vessel and was responsible to the other owners for·
due care in her management, and so the trial judge held.

The case of *Moody* v. *Buck* (1 Sand. 304), which holds that.
one co-owner of a vessel who takes and navigates her for his·
own benefit, is not liable to his co-owners for her loss by his
carelessness, even if correctly decided upon the facts there
existing, is not applicable to a case like this, where the
co-owner takes the vessel, not in his right as co-owner for the
purpose of using his own, but under an agreement with the
other owners whereby he becomes the charterer, lessee or bailee·
of the vessel, and thus bound to some duty of care and fidelity.
There can, however, be no question that that case was incor-
rectly decided, and the rule laid down therein is not consonant
with reason or justice. I cannot find that it has ever been fol-
lowed as authority in any subsequent case and it is in conflict
with many authorities. (*Sheldon* v. *Skinner*, 4 Wend. 529;
*Chesley* v. *Thompson*, 3 N. H. 9; *Herrin* v. *Eaton*, 13 Me.
193; *Martin* v. *Knowllys*, 8 T. R. 145; *Gillot* v. *Dossat*, 4
Martin [La.], 203; Domat's Civ. Law, § 1489; 1 Parsons on
Maritime Law, 95; Ford's Law of Merchant Shipping, 35, 45;·
Cooley on Torts, 328, 659.)

The Sheldon was loaded with ice and started from the coast
of Maine for a southern port. She soon encountered storms,.
and the defendant for more than two days was constantly on
duty, and then becoming exhausted, he went to his cabin,
leaving the vessel in charge of the mate and crew. He took
a large dose of quinine and laid down. The mate found that·
the rudder was broken and useless, and that the vessel could
not be steered. He caused the captain to come on deck. He
refused to believe that the vessel was in any trouble, and
refused the help of two tugs, the masters of which saw the
difficulty under which his vessel was laboring, and successively
offered to take her in tow. They cautioned him that his ves--

sel was gradually and certainly drifting upon the shore; and in broad day-light she did drift upon the shore without any effort upon the part of the defendant or any of his crew to save her, and she became a total wreck. Parsons and Loud had insured their interest in the Phœnix Insurance Company, and it paid them the loss. It thus became subrogated to their claim, if any, against the defendant for his negligence or misconduct in the management of the vessel, and it assigned that claim to the plaintiff. He, standing in the shoes of Parsons and Loud, brought this action against the defendant to recover damages for the loss of the vessel, alleging that it was due to his carelessness and misconduct.

The defendant claims that from the time he went to his cabin, leaving the vessel in charge of his mate and crew, to the time the vessel was wrecked, and he found himself in the life-saving station, he was unconscious and knew nothing of what occurred — that in fact he was from some cause insane, and, therefore, not responsible for the loss of the vessel. The case was submitted to the jury on the theory that the defendant, if sane, was guilty of negligence causing the destruction of the vessel, but if insane was not responsible for her loss through any conduct on his part which in a sane person would have constituted such negligence as would have imposed responsibility.

The important question for us to determine then is whether the insanity of the defendant furnishes a defense to the plaintiff's claim, and I think it does not. The general rule is that an insane person is just as responsible for his torts as a sane person, and the rule applies to all torts, except perhaps those in which malice and, therefore, intention, actual or imputed, is a necessary ingredient, like libel, slander and malicious prosecution. In all other torts intention is not an ingredient, and the actor is responsible, although he acted with a good and even laudable purpose, without any malice. The law looks to the person damaged by another and seeks to make him whole, without reference to the purpose or the condition, mental or physical, of the person causing the damage. The liability of a

lunatic for his torts, in the opinions of judges, has been placed upon several grounds. The rule has been invoked that where one of two innocent persons must bear a loss, he must bear it whose act caused it. It is said that public policy requires the enforcement of the liability that the relatives of a lunatic may be under inducement to restrain him, and that tort feasors may not simulate or pretend insanity to defend their wrongful acts causing damage to others. The lunatic must bear the loss occasioned by his torts, as he bears his other misfortunes, and the burden of such loss may not be put upon others.

In Buswell on Insanity (sec. 355) it is said: "Since in a civil action for a tort it is not necessary to aver or prove any wrongful intent on the part of the defendant, it is a rule of the common law that although a lunatic may not be punishable criminally, he is liable in a civil action for any tort he may commit."

In Cooley on Torts (98) the learned author says: "A wrong is an invasion of right to the damage of the party who suffers it. It consists in the injury done, and not commonly in the purpose or mental or physical capacity of the person or agent doing it. It may or may not have been done with bad motive; the question of motive is usually a question of aggravation only. Therefore, the law in giving redress has in view the case of the party injured, and the extent of his injury, and makes what he suffers the measure of compensation. * * * There is consequently no anomaly in compelling one who is not chargeable with wrong intent to make compensation for an injury committed by him; for, as is said in an early case, 'the reason is because he that is damaged ought to be recompensed.'" And at page 100 he says: "Undoubtedly there is some appearance of hardship — even of injustice — in compelling one to respond for that which, for want of the control of reason, he was unable to avoid; that it is imposing upon a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties. But the question

of liability in these cases, as well as in others, is a question of policy, and it is to be disposed of as would be the question whether the incompetent person should be supported at the expense of the public, or of his neighbors, or at the expense of his own estate. If his mental disorder makes him dependent, and at the same time prompts him to commit injuries, there seems to be no greater reason for imposing upon the neighbors or the public one set of these consequences rather than the other; no more propriety or justice in making others bear the losses resulting from his unreasoning fury when it is spent upon them or their property, than there would be in calling upon them to pay the expense of his confinement in an asylum when his own estate is ample for the purpose."

In Shearman and Redfield on Negligence (sec. 57) it is said: "Infants and persons of unsound mind are liable for injuries caused by their tortious negligence; and, so far as their responsibility is concerned, they are held to the same degree of care and diligence as persons of sound mind and full age. This is necessary, because otherwise there would be no redress for injuries committed by such persons, and the anomaly might be witnessed of a child, having abundant wealth, depriving another of his property without compensation."

In Reeves' Domestic Relations (386) it is said: "Where the minor has committed a tort with force, he is liable at any age; for in case of civil injuries, with force, the intention is not regarded; for in such case a lunatic is as liable to compensate in damages as a man in his right mind."

The doctrine of these authorities is illustrated in many interesting cases. (*Bullock* v. *Babcock*, 3 Wend. 391; *Hartfield* v. *Roper*, 21 id. 615; *Krom* v. *Schoonmaker*, 3 Barb. 647; *Conklin* v. *Thompson*, 29 id. 218; *Cross* v. *Kent*, 32 Md. 581; *Neal* v. *Gillett*, 23 Conn. 437; *Huchting* v. *Engel*, 17 Wis. 230; *Brown* v. *Howe*, 9 Gray, 84; *Morain* v. *Devlin*, 132 Mass. 87; *Beales* v. *See*, 10 Penn. St. 56; *Humphrey* v. *Douglass*, 10 Vt. 71; *Morse* v. *Crawford*, 17 id. 499; *Cross* v. *Andrews*, Croke, Elizabeth, 622; *Jennings* v. *Rundall*, 8 T. R. 336.)

In *Bullock* v. *Babcock* Judge MARCY, writing in a case where an infant twelve years old was held liable for putting out one of the eyes of another infant, said: "The liability to answer in damages for trespass does not depend upon the mind or capacity of the actor; for idiots and lunatics are responsible in the action of trespass for injuries inflicted by them."

In *Krum* v. *Schoonmaker* it was held that a lunatic may be sued for an injury done to another, because the intent with which the act was done is not material. There the action was against a justice of the peace for false imprisonment for issuing a warrant without any complaint, by virtue of which the plaintiff was arrested.

In *Cross* v. *Kent* it was held that a lunatic or insane person, though not punishable criminally, is liable to a civil action for any tort he may commit; that in an action against a party for setting fire to and burning a barn, neither evidence of his lunacy, nor that the burning was the result of accident, is admissible in mitigation of compensatory damages.

In *Neal* v. *Gillett*, in an action on the case for damages caused by the negligence of the defendants, who were severally of the ages of thirteen and sixteen at the time of the injury, it was held that where the plaintiff claims only actual damages, the youth of the defendants is not to be taken into consideration in determining the question of their negligence.

In *Huchting* v. *Engel* it was held that an infant, though under seven years of age, was liable in an action of trespass for breaking and entering the plaintiff's premises and breaking down and destroying his shrubbery and flowers.

In *Karow* v. *The Continental Insurance Company* it is said in the opinion: "While the burning of his own property by an assured under no restraint of duty and incapable of care, and without any intent or design, does not relieve the company from liability, yet the same act of burning another's property might subject such person to damages therefor, not on the ground of negligence, as that word is usually understood, but, in the language of Chief Justice GIBSON, 'on the

principle that where a loss must be borne by one of two inno-
cent persons, it should be borne by him who occasioned it.' "

In *Brown* v. *Howe* an insane person carelessly set fire to
the dwelling house of his guardian, and while it was held that
the guardian could not be allowed the amount of his damages
in his probate account, it was held that his only course was to
sue the administrator of the lunatic who had died, in a court
of law, and have a judgment fixing his damages, and collect it
from the assets, if the estate was solvent; if not, to share
with the other creditors.

In *Morain* v. *Devlin* it was held that a lunatic was civilly
liable for an injury caused by the defective 'condition of a
place, not in the exclusive occupancy and control of a tenant,
upon real estate of which he is the owner, and of which his
guardian has the care and management.

In *Beales* v. *See* it was said by GIBSON, C. J.: "As an
insane man is civilly liable for his torts, he is liable to bear
the consequences of his infirmity, as he is liable to bear his
misfortunes, on the principle that where a loss must be borne
by one of two innocent persons it shall be borne by him who
occasioned it."

In *Morse* v. *Crawford*, in an action for tort, it was held
that the fact that the defendant was insane at the time of com-
mitting the injury was no defense to the action, and that if
the action be for destroying property intrusted to the defend-
ant, it is no defense that the plaintiff, at the time of delivering
the property to the defendant, knew that he was insane.   In
the opinion of the court it is said : " It is a common principle
that a lunatic is liable for any tort which he may commit,
though he is not punishable criminally.   When one receives
an injury from the act of another, this is a trespass, though
done by mistake or without design.   Consequently no reason
can be assigned why a lunatic should not be held liable."

In *Jennings* v. *Rundall* Lord Chief Justice KENYON said :
" If an infant commit an assault, or utter slander, God forbid
that he should not be answerable for it in a court of justice."
LAWRENCE, J., also writing in that case, mentioned the dis-

tinction between negligence and an act done by an infant; and he held that the same rule would have to be applied if an action were brought against an infant for negligently keeping the plaintiff's cattle, by which they died, as would be applied if the declaration charged the infant with having given the cattle bad food by which they died.

There can be no distinction as to the liability of infants and lunatics, between torts of non-feasance and of misfeasance — between acts of pure negligence and acts of trespass. The ground of the liability is the damage caused by the tort. That is just as great whether caused by negligence or trespass; the injured party is just as much entitled to compensation in the one case as in the other, and the incompetent person must, upon principles of right and justice and of public policy, be just as much bound to make good the loss in the one case as the other; and I have found no case which makes the distinction. That infants and lunatics are liable for damage to property caused by their negligent acts, was asserted in several of the authorities above cited; and it has never been doubted that at common law an action of trover would lie against one intrusted with the personal property of another who destroys it, whether the destruction be by a negligent act or a willful tort.

I sum up the result of my examination of the authorities as fol lows : This vessel was intrusted to the defendant — not as agent — but as to the other owners as charterer, lessee or bailee, and if he caused her destruction by what in sane persons would be called willful or negligent conduct, the law holds him responsible. The misfortune must fall upon him and not upon the other owners of the vessel.

If the defendant had become insane solely in consequence of his efforts to save the vessel during the storm, we would have had a different case to deal with. He was not responsible for the storm, and while it was raging his efforts to save the vessel were tireless and unceasing, and if he thus became mentally and physically incompetent to give the vessel any further care, it might be claimed that his want of care ought

not to be attributed to him as a fault. In reference to such a case we do not now express any opinion.

If it could be held that the obligation of the defendant to take due care of the vessel while she was in his possession, under his contract with the other owners, was an obligation springing out of his contract, and thus a contract obligation, such a view of the case would not aid him. He was sane when he entered into the contract, and his subsequent insanity would furnish no defense to an action for a breach of the contract. (*Oakley* v. *Mortin*, 11 N. Y. 625 ; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 id. 487 ; *Evans* v. *United States Life Insurance Co.*, 64 id. 304; *Spalding* v. *Rosa*, 71 id. 40.)

If it should be found upon the new trial of this action that the defendant's mental condition was produced wholly by his efforts to save the vessel during the storm, and it should, therefore, be held that no fault could be attributed to him on account of what he personally did or omitted to do, then the question would still remain whether the carelessness of his mate and crew, who were his servants, could not be attributed to him, and his liability be thus based upon their carelessness. They did. nothing whatever to save the vessel. They did not even expostulate with him or tender him any advice or a word of caution, and yet the mate saw what the captains of the tugs saw at a distance, that something was the matter with him. It is difficult to perceive how they could have failed to see that he was either incompetent to manage the vessel, or that he was willfully wrecking her. We leave the effect of their conduct upon the defendant's liability to be determined, if it should become necessary, upon the new trial, simply saying that the question is worthy of careful consideration, whether the defendant can allege his own incompetency, and at the same time claim that for any reason the mate ought not to have taken control of the vessel.

The case of *Hays* v. *Phenix Insurance Co.* (25 J. & S. 199 ; aff., 127 N. Y. 656), which seems to have controlled the decision below, is not an authority for the defendant. There he brought an action against the insurance company to recover

the amount of his insurance upon this vessel, and his mere carelessness, whether sane or insane, was no defense to such an action.    It is an unquestioned rule of law that an insurance company cannot successfully defend an action upon its policy to recover for a loss by showing that the insured destroyed the property while insane, or that its destruction was caused by the carelessness of his agents and servants.    The liability of the insured to respond in damages for the loss or destruction of the property of another owner stands upon different principles. (*Liverpool S. Co.* v. *Phœnix Insurance Co.*, 129 U. S. 438; *Karow* v. *Continental Insurance Co.*, 57 Wis. 56.)

Since writing the above, suggestions have been made by some of my brethren which should receive some attention.

The fact that the defendant was a part owner of the vessel can play no part in this discussion.    He did not take the vessel as part owner, but under the contract with the other owners; and as to them, his duties and obligations were such as spring from the relation created by that contract.    Further, he was the minority part owner, and the others were the majority part owners, and, as such, had the right and the power to control the vessel against his will. ( *Ward* v. *Ruckman*, 36 N. Y. 36; *Gould* v. *Stanton*, 16 Conn. 12; *The William Bagaley*, 5 Wall. 406; McLochlin's Merchant Shipping, 89.) In *Ward* v. *Ruckman* it was held that the majority owners of a vessel have the right to displace the master at their pleasure, though he be in possession as part owner.    In making their contract with the defendant, the other part owners were exercising their right as the majority part owners. *Non constat*, but that they would, except for the contract, have displaced the defendant and appointed some other person master of the vessel.    Therefore, as I have before said, he must be treated as the charterer, lessee or bailee of the vessel.

I quite agree, and no one in this case has contended for more, that the defendant was bound, in the navigation and use of the vessel, to bestow only ordinary care, to wit: Such care as a reasonably careful and prudent owner would ordinarily give to his own vessel.    Such is the standard of care set

up for all bailees of personal property for hire. But what is that standard? It is not such care as a lunatic, a blind man, a sick man, or a man otherwise physically or mentally imperfect or impotent could give. Such a man is not the jural man of ordinary prudence, and he does not furnish the standard. The standard man is no individual man, but an abstract or ideal man of ordinary mental and physical capacity and ordinary prudence. The particular man whose duty of care is to be measured does not furnish the standard. He may fall below it in capacity and prudence, yet the law takes no account of that, but requires that he should come up to the standard and his duty be measured thereby.

So when we have defined, as above, the duty of care resting upon the defendant, we have made no progress in the solution of the question here involved, for it is conceded that he took no care whatever. It is sought, however, to excuse him because he was insane and incapable of care; and the question, and, in the end, the sole question for us to determine, is whether that excuse is a good one; and I have heard no argument to sustain it. It is unquestioned that an insane person is civilly liable for his active torts; and is there then any reason for saying that he is not liable for his negligent torts? To uphold this judgment, we must engraft upon the general rule the exception or qualification that he is not liable for his negligent torts. If the defendant had taken a torch and fired the vessel, he would have been liable for her destruction, although his act was unconscious and accompanied by no free will. But if he had negligently fired the vessel and thus destroyed her, being incapable from his mental infirmity from exercising any care, the claim must be that he would not be liable. Such a distinction is not hinted at in any authority, has no foundation whatever in principle or reason, and cannot stand with authorities I have before cited.

My conclusion, therefore, is that the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except PECKHAM, GRAY and O'BRIEN, JJ., dissenting.

Judgment reversed.