The Mutual Fire Insurance Company of Chester County,
*v.* Samuel W. Showalter, Committee of the Person and
Estate of Edward S. Eaby, a Lunatic, Appellant.

*Tort—Lunacy of defendant not a defense.*

The lunacy of a defendant is no defense to an action for the recovery of compensatory damages for a tort in which wrongful or malicious intent is not an essential element.

*Insurance—Fire caused by wilful act of lunatic—Lunatic's liability.*

Where a lunatic sets fire to a building owned jointly by himself and sister, an insurance company, having paid the sister's loss, has a cause of action, under the subrogation clause of its policy, against the lunatic's estate to recover the sum so paid by it to her. In such action the insanity of the defendant cannot be set up as a defense.

*Actions—Parties—Subrogation of Insurance Co. to right of injured party.*

A person's property, which was insured, having been set on fire the insured has a cause of action against the wrongdoer which inures to the benefit of the insurance company under a clause of subrogation; ordinarily such suit should be brought in the name of the insured, but in view of the subrogation clause and assignment made pursuant thereto and an agreement entered of record in the case the company may maintain the action if the insured could do so.

Argued Nov. 19, 1896. Appeal, No. 112, Nov. T., 1896, by defendant, from judgment of C. P., Chester Co., Oct. T., 1895, No. 44, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for wilful burning of a barn. Before WADDELL, P. J.

On January 18, 1895, a barn with its contents belonging to Edward S. Eaby and his sister, Mary S. Richwine, was totally destroyed by fire. The property was insured in the plaintiff company,— barn for $850 and the contents for $350. The insurance covered much less than the whole loss.

Edward S. Eaby, who had become insane, appeared to have set the barn on fire, either wilfully or by gross negligence. The insurance had been recovered by Edward S. Eaby and his sister Mary from the insurance company. Subsequently the company procured an assignment to them for the entire claim for loss which had been suffered by Mrs. Richwine. The company thereupon brought suit against the estate of Edward S. Eaby in the name of Mary S. Richwine. Subsequently her name as use plaintiff was stricken out and the plaintiff's statement amended so as to cover only the amount paid her by the company, and a new assignment executed by Mrs. Richwine in accordance with the subrogation clause of the policy.

The defendant submitted a number of points involving directions which in substance may be summarized: That if the said Edward S. Eaby at the time of the burning of the barn was in such a state of mental incapacity at the time as to be unable to foresee and guard against his conduct the verdict should be for the defendant. These points were refused by the trial judge. The court left the case to the jury on the single question as to whether Edward S. Eaby burned the barn deliberately or by accident, instructing them that if he burned it by accident the

454        INS. CO. *v.* SHOWALTER, Appellant.

Statement of Facts—Opinion of the Court.   [3 Pa. Superior Ct.

verdict should be for the defendant; if he burned it deliberately it makes no difference whether he was sane or insane.

Verdict for plaintiff $605.68 and 6 cts. costs. Defendant moved for a new trial, which was refused in the following opinion by WADDELL, P. J.

### OPINION OF COURT REFUSING NEW TRIAL.

This was an action brought by the plaintiff to recover, by virtue of an assignment, a certain sum of money, paid by it, as a loss upon a policy of insurance, occasioned by the illegal act of Edward S. Eaby, a lunatic.   We submitted to the jury the question, whether the said Edward S. Eaby burned the property insured, saying if he did, and it was done through accident or negligence, the plaintiff could not recover.

If, however, his insanity was the only defense, this would not avail; that he was liable for the injury done by him, to another's property, although insane, and he must answer to the extent the plaintiff was required to pay, by reason of his act.

The jury found for the plaintiff, and we are asked to grant a new trial because of such instructions, and further, because we refused to affirm certain points presented by the defendant.

We have carefully reconsidered our rulings, in the light of the argument and authorities presented by the counsel for the defendant, and believe they were right as held upon the trial, and must refuse the motion for a new trial.

*Errors assigned* were to the refusal of defendant's points, the substance of which are indicated in the statement of facts.

*J. Carroll Hayes* and *Wm. M. Hayes*, for appellant.—

*Arthur T. Parke*, with him *Thomas W. Pierce*, for appellee.—

OPINION BY RICE, P. J., February 16, 1897:

The plaintiff company issued a policy of fire insurance to the defendant, Edward S. Eaby, and his sister Mary S. Eaby, to the amount of $850 on the stone barn, and $350, on the contents thereof.   For the purposes of the present discussion it is sufficiently exact to say, that on the morning of January 18, 1895, Edward, being insane at the time, after poisoning the cattle,

set fire to the barn, and it was totally destroyed. His sister's loss, as settled, adjusted and paid by the company was $569.25. Subsequently, the company obtained from her an assignment of her claim against her brother. Instead of restricting the assignment to the sum paid her, it was so drawn as to cover her entire loss, which, in fact, was much more than the sum payable to her under the policy. Upon this assignment the company brought an action of trespass in her name to its use against Edward's committee to recover from his estate her entire loss. After the suit had been brought she filed a bill in equity, praying for a decree that the assignment be delivered up and canceled. This proceeding resulted in an agreement between her and the parties to the present action whereby her name was dropped, and the case allowed to proceed in the name of the company, without prejudice to its rights by reason of the change of the title of the suit. She thereupon made a new assignment, in accordance with the subrogation clause of the policy, and the plaintiff's statement was amended so as to cover only the amount the company had paid her. The defendant pleaded not guilty.

The policy contains the following clause: " If this company shall claim that the fire was caused by the act or neglect of any person or corporation private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the assured for the loss resulting therefrom, and such right shall be assigned to this company by the assured on receiving such payment." From the very nature of the contract of fire insurance as a contract of indemnity, the insurer, upon paying to the assured the amount of a loss, total or partial, of the property insured, becomes without any formal assignment, or any express stipulation to that effect in the policy subrogated in a corresponding amount to the assured's right of action against the person responsible for the loss: Liverpool & G. W. Steam Co. v. Phœnix Ins. Co., 129 U. S. 397; L. ed. Bk. 32 p. 788. In the absence of such assignment and express stipulation and legislative enactment, subrogation is administered upon equitable principles, and may be refused if it comes in conflict with a superior equity. As the rights of the insurer, in such case, are worked out through the cause of action of the insured, the suit against the wrong doer should, ordinarily, be brought in the

name of the insured. But whether the right of the insurance company in the present case be regarded as legal or equitable makes little difference, in view of the subrogation clause above quoted, the assignment made pursuant thereto and the agreement entered of record in the case. The company may maintain the action if Mary S. Eaby (now Richwine) could.

The single question raised by the assignments of error is as to the liability of an insane person for an act, which, in a sane person, would be an actionable wrong—a trespass. The counsel for the defendant, claiming that this is an open and undecided question in Pennsylvania, argue with great learning and ability that the case comes within the general principle that in the absence of negligence or fraud, the injury is damnum absque injuria and the sufferer must bear his own loss. They say, quoting from Judge Holmes on the common law : "The general principle of our law is that loss from accident must lie where it falls, and this principle is not affected by the fact that a human being is the instrument of the misfortune. But, relatively to a human being, anything is accident which he could not fairly have been expected to contemplate as possible, and therefore to avoid : " Holmes on Common Law, 94. The same learned jurist admits later (p. 109) that insanity is a more difficult matter to deal with, and that no general rule can be laid down upon it. He claims however that if insanity of a pronounced type exists, manifestly incapacitating the person from complying with the rule which he has broken, " good sense would require it to be admitted as an excuse." It is to be observed that Judge Holmes does not assert that such is the law ; and while there is plausibility in the defendant's contention, the authorities, upon rational grounds, uniformly hold that, except, perhaps, in those torts where wrongful or malicious intent is an essential element, as for example, fraud, slander and malicious prosecution, insanity is no defense. Mr. Bishop, while seeming to think that it ought to be a defense, nevertheless concedes : " In those cases wherein the intent is immaterial, there is abundant authority for saying that insanity constitutes no defense : " Bishop's Non-Contract Law, sec. 507.

There is, we believe, no reported case in Pennsylvania in which the question as to the liability of an insane person for his torts has been distinctly raised, and decided by our Supreme

Court. But in at least two cases it has been assumed to be a well settled principle of law. In Beales v. See, 10 Pa. 56, it was held that an executed contract by a merchant for the purchase of goods cannot be avoided by proof of insanity at the time of the purchase, unless there has been fraud committed on him by the vendor or he has knowledge of his condition. Chief Justice Gibson said: "Should he have made a wild and unthrifty purchase from a stranger unapprised of his infirmity, who is to bear the loss that must be incurred by one of the parties to it? Not the vendor who did nothing that any other man would not have done. As an insane man is civilly liable for his torts, he is liable to bear the consequences of his infirmity as he is liable to bear his misfortunes, on the principle that where a loss must be borne by one of two innocent persons it shall be borne by him who occasioned it." In Lancaster Co. Nat'l Bank v. Moore, 78 Pa. 407, Mr. Justice Paxson quoted this language with approval and asserted that the general proposition is well settled that persons not sui juris and who have no general capacity to contract debts, are nevertheless liable for their torts and may bind themselves for necessaries. "Such rule rests upon principles of sound public policy." Speaking of an expression in the opinion in La Rue v. Gilkyson, 4 Pa. 375, upon a point not before the court he said, "But the mere dictum of so eminent a jurist as Chief Justice Gibson is entitled to respect." In Wirebach's Exr. v. First Nat'l Bank, 97 Pa. 543, Mr. Justice Trunkey said: "An insane person is incapable of committing a crime, or making a contract, yet it is common to speak of his torts and his contracts, and on many of them he is liable in a civil action."

In Morain v. Devlin, 132 Mass. 87, it was held that a lunatic was liable for an injury caused by the defective condition of a place not in the exclusive control and occupancy of a tenant upon the real estate of which he was the owner and of which his guardian had the care and management.

In Morse v. Crawford, 17 Vt. 499, it was held that an insane person who destroyed articles bailed was liable therefor, although at the time of the bailment the bailor knew of his insanity. "It is a common principle," said the court, "that a lunatic is civilly liable for any tort he may commit, although he is not punishable criminally."

" The liability to answer in damages for trespass does not depend upon the mind or capacity of the actors ; for idiots and lunatics, as we see by the case reported in Hobart," (Weaver v. Ward,) " are responsible in the action of trespass for injuries inflicted by them:" Bullock v. Babcock, 3 Wend. 391.

So in Behrens v. McKenzie, 23 Iowa, 333, where the general liability of lunatics for their torts and on their contracts was discussed, one of the conclusions reached was, that such persons are generally held liable civilly for trespasses and torts, as the actionable quality of such acts does not depend upon intention.

It was held in Cross v. Kent, 32 Md. 581, that in an action for setting fire to and burning a barn neither evidence of lunacy nor that the burning was the result of an accident was admissible in mitigation of the compensatory damages. This was going much farther than the learned trial judge did in the present case, for he instructed the jury that if the defendant accidentally set fire to the building there could be no recovery.

McIntire v. Sholty, 121 Ill. 660 was an action, by the personal representatives of a person wrongfully killed, against the estate of the person killing. The court, adopting the reasoning of Judge COOLEY upon the subject, held that the question of liability is one of public policy, and declared that the rule, that a lunatic, though not punishable criminally, is liable in a civil action for his torts, is too well settled to be disturbed.

In Ward v. Conatsar, 4 Baxt. (Tenn.) 64, an action was maintained against a lunatic defendant and his guardian to recover compensatory damages for the shooting of the plaintiff whereby he was seriously and permanently injured. To the same effect as the last two cases is Jewell v. Colby, 66 N. H. 399.

The case of Williams v. Hays, 143 N. Y. 442 is so closely analogous to the present that we feel warranted in reviewing it at some length. Parsons and Loud insured their one sixteenth interest in the brig, in the Phœnix Ins. Co. The defendant was a joint owner with them, and took the brig to sail on shares. The brig was lost through his negligence or misconduct, and the company paid Parsons and Loud their loss. It thus became subrogated to their claim, if any, against the defendant, and assigned that claim to the plaintiff. He, standing in the shoes of Parsons and Loud, brought an action against the defendant

to recover damages for the loss of the vessel, alleging that it was due to his carelessness and misconduct. The defense was that he was not responsible for the loss, because he was temporarily insane. The court of appeals, in an elaborate opinion by Judge EARL, in which the authorities were all collected, held, that the action might be maintained, and that as to the liability of an insane person there is no substantial difference between a negligent tort and a trespass. "If he caused the destruction of the vessel by what in sane persons would be wilful or negligent conduct, the law holds him responsible. The misfortune must fall on him and not upon the owners of the vessel." It seems that the defendant Hays had also brought suit and recovered the insurance on his interest: Hays v. Phenix Ins. Co., 127 N. Y. 656. Concerning this feature of the case, Judge EARL said: "It is an unquestioned rule of law that an insurance company cannot successfully defend an action upon its policy to recover for a loss by showing that the insured destroyed the property while insane, or that its destruction was caused by the carelessness of his agents and servants. The liability of the insured to respond in damages for the loss or destruction of the property of another owner stands upon different principles," citing, Liverpool S. Co. v. Phenix Ins. Co., 129 U. S. 438; Karow v. Continental Ins. Co., 57 Wis. 56; Hays v. Ins. Co., supra.

We have not undertaken to cite all the cases bearing upon the question, but, after a somewhat thorough research, we have been able to find no case in which it has been held that the lunacy of the defendant is a defense to an action for the recovery of compensatory damages for a tort in which wrongful or malicious intent is not an essential element.

It has been asserted that the rule is, at least in this country, a universal one, that no one can be made liable for injuries to the person or property of another, without some fault or negligence on his part. It is undoubtedly true that the tendency of modern decisions is in that direction, but it is unsafe to say that the rule has no exceptions nor limitations. There are many injuries to which, upon sound principles of public policy, the rule is applicable, that where a loss must be borne by one of two innocent persons it shall be borne by him who occasioned it. Belonging to these classes is the injury to the person or

property of another by an insane person, by an act which in a sane person would be a trespass. To apply the last mentioned rule to such a case does not, in the slightest degree, imply punishment of a person who is incapable of wrongful intent; it simply gives compensation to him who has been damaged; it places the loss where the burden more justly belongs. "Let it be supposed," says Judge COOLEY, "that one of this unfortunate class meets a traveler on the highway, and, by force, or by terror of his threats takes from him his horse and vehicle, and abuses or destroys them. In a sane person this may have been highway robbery; but the lunatic is incapable of criminal intent, and therefore commits no crime. Neither is the case one in which a contract to pay for the property, nor for the injury can be implied, for the law can imply no contract relations where the capacity to enter into them is withheld. But a plain wrong has been done, because the traveler has been forcibly deprived of his property; and if the person at whose hands the wrong has been suffered is possessed of an estate from which compensation can be made, no reason appears why this estate should not be burdened to make it. In other words, it seems but just that the consequences of the unfortunate occurrence should fall upon the estate of the person committing the injury, rather than upon that of the person who has suffered from it. . . . Undoubtedly there is some appearance of hardship— even of injustice—in compelling one to respond for that which, for want of the control of reason, he was unable to avoid; that it is imposing upon a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the' same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties. But the question of liability in these cases, as well as in others, is a question of policy; and it is to be disposed of as would be the question whether the incompetent person should be supported at the expense of the public, or of his neighbors, or at the expense of his own estate. If his mental condition makes him dependent, and at the same time prompts him to commit injuries, there seems to be no greater reason for imposing upon the neighbors or the public one set of these consequences rather than the other; no more propriety or justice in making others bear the losses resulting from his unreasoning fury when it is

spent upon them or their property, than there would be in calling upon them to pay the expense of his confinement in an asylum when his estate is ample for the purpose." He then proceeds to suggest the considerations of public policy in favor of the rule as we have stated it. They seem to us conclusive of the question. But to quote his remarks at greater length would extend this opinion beyond reasonable limits; we therefore content ourselves with a bare reference to his further discussion of the question: Cooley on Torts, 98, etc. See also 11 Am. & Eng. Ency. of Law, 144; 7 Wait's Actions and Defenses, 157; 1 Ch. Pl., 76; Krom v. Schoonmaker, 3 Barb. 647; Dickinson v. Barber, 9 Mass. 224; McGee v. Willing, 31 Leg. Int. 37; Shephard v. Wood, 1 Lanc. Law Review, 175.

Under the testimony there were but two theories as to the cause of the burning of the barn; one was that it was accidentally caused by the explosion of the defendant's lantern; the other was that he set fire to it with matches. The court instructed the jury that if it was accidental there could be no recovery, but that if the defendant fired the barn intending to fire it, the fact that he was insane at the time would be no defense. In thus distinguishing between a pure accident and an act which in a sane person would have been intentional and deliberate the court committed no error. These conclusions render separate discussion of the assignments of error unnecessary. They are all overruled and the judgment is affirmed.