### LEARY et al. v. OATES.

No. 13148.

Court of Civil Appeals of Texas.
Fort Worth.
April 12, 1935.

Rehearing Denied May 16, 1935.

Handley & Shaeffer, of Dallas, for appellants.

George, Brannan & Tipps, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

While J. H. Oates was driving his automobile on the public highway he saw an approaching car, driven by W. A. Leary, coming in the opposite direction at a speed of at least fifty miles an hour, traveling in the middle of the highway, and, in order to avoid possible danger of a collision with it, Oates pulled his car to his right, practically off the pavement and some 4 or 5 feet onto the dirt shoulder of the road. When the other car was about 40 or 50 feet distant from him, Oates saw that the eyes of the driver of the other car were closed, apparently in sleep, his head slightly slumped down, but with his left hand on the steering wheel of his car. Oates then took his feet off the accelerator of his car, put on his brakes, and sounded the horn of his car as a warning to the driver of the other car, and when he did so Leary suddenly opened his eyes, and instead of turning his car to his right so as to avoid a collision, he swerved it to his left and collided with and overturned Oates' automobile, resulting in serious personal injuries to him, for which he, as plaintiff, recovered judgment against W. A. Leary and the Sinclair Oil Company, for whom Leary was working at the time as its duly authorized servant and agent and in pursuit of the duties of his employment. The highway was practically straight and the view was unobstructed for a distance of some 200 or 300 yards, and the accident occurred on a clear day about 3 o'clock in the afternoon.

The facts recited above were proven by uncontroverted testimony of several disinterested witnesses, supplemented by that of plaintiff, and were relied on by plaintiff to support his allegations of negligence on the part of defendants, as the proximate cause of his injury.

Under a plea of general denial, defendant Leary testified that he did not know what had happened until after the accident; was not asleep because he was in normal health, sober, had not felt sleepy before the accident, and remembered seeing some birds cross the road shortly before the accident; the last he remembered was at the top of the hill, about 300 yards from the place of collision; had experienced dizziness before the accident, by reason of which his vision was blurred a second or so and then passed off; knew he was unconscious because if he had not been he would have seen the Oates' car before the accident.

Dr. Bailey Collins, who appeared on the scene just after Leary left his car after the accident, took him to the hospital in Wichita Falls where he treated him for injuries to his head resulting from the accident. Witness knew nothing of Leary's condition before the accident; but in answer to a hypothetical question based on the facts testified to by Leary as occurring before the accident, witness gave it as his opinion that Leary had had an attack of acute indigestion or intestinal disturbance which caused him to feel faint, and further as follows: "Leary told me his name after we got in the car and started to Wichita Falls. Acute indigestion causes dizziness or fainting. It is caused by the blood leaving the brain and going into the abdominal intestines and the patient momentarily loses consciousness. They do not necessarily have advance notice. Usually those things come on suddenly. From the first feeling of faintness it would take about a minute or two until the sufferer was completely insensible. Uusally that is the length of time. There could be dizziness without fainting, the party still remaining conscious. When a man faints all the nerve system ceases to function; that is, the conscious mind. Generally when a man faints from acute indigestion it only lasts a second or two or a minute or two—it doesn't last an hour or longer. At the time one is in a fainting condition he cannot sit erect; one would reflex or fall to the side or forward. If a man was wholly unconscious and fainted and felt dizzy, he could not keep his hands on the steering wheel of a car and drive it."

In answer to special issues the jury found that the accident was not an unavoidable accident; that the defendant Leary was not unconscious as the result of physical ailment just prior to the accident.

Those findings were supplemented by the following findings by the trial judge: "The court is of the opinion and so finds from the uncontradicted and undisputed evidence in this cause, that the defendant, W. A. Leary, at the time of the alleged collision and just prior thereto, was an employee of and in the employ of the defendant, Sinclair Refining Company, and was at that time engaged in the furtherance of the business of his employer and was acting in the scope of and

course of his employment; that the defendant, W. A. Leary, at the time of the collision and just prior thereto, was operating and driving his car on the left hand, or wrong, side of the highway, and at such a rate of speed as to endanger the lives of persons and the safety of property who were then and there on said highway, and that he failed to keep a lookout for cars approaching from the opposite direction, all as alleged by the plaintiff, and that all of such acts and omissions were negligence proximately causing the collision and the resulting injuries sustained by the plaintiff."

It is contended that testimony cited above and other facts and circumstances of like character tended to show that immediately prior to the accident Leary was in a state of unconsciousness as the result of a sudden attack of indigestion or intestinal disturbance, which caused him to lose control of his car and unable to discover plaintiff's approaching car, was sufficient to make the alleged negligence of the defendants, relied on by plaintiff for a recovery, a controverted issue of fact, at all events, which the court could not withdraw from the jury.

Appellant concedes that in a civil suit the violation of article 801 (A) and (B) of the Penal Code (Vernon's Ann.) is negligence per se, in the absence of any criminal intent, necessary to a criminal prosecution, citing West Texas Coaches v. Madi (Tex. Com. App.) 26 S.W.(2d) 199, but argues that in order to establish civil liability it must be shown further that such negligence was the proximate cause of the injury; in other words, that defendant should have foreseen that injury of like character might probably result from such negligence, and that if Leary was in an unconscious state of mind, it should have been left to the jury to determine whether he should have anticipated such a result; in accordance with the general rule announced in Blakesley v. Kircher (Tex. Com. App.) 41 S.W.(2d) 53, that the issue of proximate cause must be left to the jury.

Appellant further says: "Strangely enough, we have discovered but one case from any English-speaking jurisdiction where the precise point has been decided. That case is Slattery v. Haley, 11 British Ruling Cases, 1036–1048, 52 Ont. L. Rep. 95." A copy of that decision is attached to the brief. In that case a father was denied a recovery for the death of his minor son. While the defendant was driving an automobile he suffered a stroke and fell back in his car, which then, for lack of control, ran upon the sidewalk, where it struck and killed the boy. The decision shows an extended review of authorities, following which the court reached this conclusion expressed by the writer of the opinion: "I think it may now be regarded as settled law that to create liability for an act which is not willful and intentional, but merely negligent, it must be shown to have been the conscious act of the defendant's volition. He must have done that which he ought not to have done, or omitted that which he ought to have done, as a conscious being. Failing this, the occurrence is 'a mere accident,' 'a pure accident,' or, as it is often, but not accurately put, 'an inevitable accident.'"

We quote further from that opinion as follows:

"In Williams v. Hays (1894) 143 N. Y. 442, 38 N. E. 449, 26 L. R. A. 153, 42 Am. St. Rep. 743, the defendant was in command of a vessel. After remaining in command for two days, during which she fought a severe storm, he retired to his cabin exhausted; the mate left in charge found that he needed the captain's assistance and sent for him; he was then unconscious in his cabin and did not respond,—had his condition been normal, his failure to respond would have been negligent, but it was found at the hearing that he was then insane, and the action was dismissed. On an appeal this was reversed by a divided court—four to three—and the defendant was made liable for the loss of the boat. The opinion of the majority is well expressed in a passage from Cooley on Torts, quoted with approval ([143 N. Y. 442] at pages 447, 448 [38 N. E. 449]):

"'Undoubtedly there is some appearance of hardship—even of injustice—in compelling one to respond for that which, for want of the control of reason, he was unable to avoid; that it is imposing upon a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties. But the question of liability in these cases, as well as in others, is a question of policy, and is to be disposed of as would be the question whether the incompetent person should be supported at the expense of the public, or of his neighbors, or at the expense of his own estate.' 'The reason is because he that is damaged ought to be recompensed.' ([143 N. Y. 442] page 477 [38 N. E. 449]). After examining a number of cases the court proceeds ([143 N. Y. 442] page 451 [38 N. E. 449]):

" 'There can be no distinction * * * between acts of pure negligence and acts of trespass. The ground of the liability is the damage caused by the tort. That is just as great whether caused by negligence or trespass; the injured party is just as much entitled to compensation in the one case as in the other; and the incompetent person must, upon principles of right and justice and of public policy, be just as much bound to make good the loss in the one case as the other.'

"A statement of Gibson, Ch. J., in Beals v. See (1848) 10 Pa. 56, 61, 49 Am. Dec. 573, is quoted with approval. An insane man is 'liable to bear the consequences of his infirmity, as he is liable to bear his misfortunes, on the principle that where a loss must be borne by one of two innocent persons, it shall be borne by him who occasioned it.' "

But in the concluding portion of that opinion the court made the following statement which is explanatory of the real basis of the conclusion reached:

"It is also a matter of importance in the case in hand to remember that the action is under the Fatal Accidents Act, R. S. O. 1914, Chap. 151, which gives a right to sue only when the death has been caused by 'wrongful act, neglect, or default' (sec. 3) —expressions which, it seems to me, import intention."

We quote further from the New York decision cited as follows:

"The law looks to the person damaged by another, and seeks to make him whole, without reference to the purpose or the condition, mental or physical, of the person causing the damage * * * and if he caused her destruction by what, in some persons, would be called willful or negligent conduct, the law holds him responsible. The misfortune must fall upon him, and not upon [others]. * * * The defendant was bound, in the navigation and use of the vessel, to bestow only ordinary care, to wit, such care as a reasonably careful and prudent owner would ordinarily give to his own vessel. * * * But what is that standard? It is not such care as a lunatic, a blind man, a sick man, or a man otherwise physically or mentally imperfect or impotent, could give. Such a man is not the jural man of ordinary prudence, and he does not furnish the standard. * * * He may fall below it in capacity and prudence; yet the law takes no account of that, but requires that he should come up to the standard and his duty be measured thereby. * * * Public policy requires the enforcement of the liability * * * that tort feasors may not simulate or pretend insanity to defend their wrongful acts, causing damage to others."

In Sforza v. Green Bus Lines, 150 Misc. 180, 268 N. Y. S. 446 (1934), the defendant's driver of a bus suddenly became insane, losing control of the bus, which then ran across the street and collided with a parked truck in which plaintiff was chopping ice, and as a result of the injury sustained by him the defendant's bus line was held liable on the theory of its negligence in violating a statutory traffic regulation.

In Powell v. Berry, 145 Ga. 696, 89 S. E. 753, L. R. A. 1917A, 306, a defendant was held liable for his tort regardless of his defense that by reason of his intoxication he was unable to avoid the injury.

In Seals v. Snow, 123 Kan. 88, 254 P. 348, 349, 51 A. L. R. 829, the Supreme Court of Kansas held the defendant liable to the wife of a man whom he had killed while defendant was insane; the court saying: "It is conceded that the great weight of authority is that an insane person is civilly liable for his torts. This liability has been based on a number of grounds, one that where one of two innocent persons must suffer a loss, it should be borne by the one who occasioned it. Another, that public policy requires the enforcement of such liability in order that relatives of the insane person shall be led to restrain him and that tort-feasors shall not simulate or pretend insanity to defend their wrongful acts causing damage to others. * * * "

To the same effect were Young v. Young, 141 Ky. 76, 132 S. W. 155, and Phillips Committee v. Wards Adm'r, 241 Ky. 25, 43 S.W. (2d) 331, by the Court of Appeals of Kentucky, in which latter case the following was held as shown in this headnote to the opinion: "Insane person is liable civilly for torts to same extent as sane person, except punitive damages may not be allowed."

The following announcement in 32 C. J. § 545, p. 749, is supported by numerous authorities there cited:

"While a guilty intent is an essential element of criminal responsibility, intent is not generally an essential element of liability for tortious acts or negligence, and hence the general rule is that an insane person may be liable for his torts the same as a sane person, except perhaps those in which malice, and therefore intention, is a necessary ingredient, as in the case of libel or slander. His liability for his tort, it has

been held, is not affected by the fact that plaintiff knew the mental condition of defendant and might have prevented the act, or that defendant was under guardianship at the time.

"In respect to this liability there is no distinction between torts of nonfeasance and of misfeasance, and consequently an insane person is liable for injuries caused by his tortious negligence. So far as his liability for negligence is concerned, he is held to the same degree of care and diligence as a person of sound mind."

In Texas & P. R. Co. v. Baker, 215 S. W. 556, 557, by the Commission of Appeals, this was said: "A duty being imposed by statute, a breach thereof, resulting in an injury, of the character which the statute sought to prevent, to one for whose advantage it was enacted, itself constitutes negligence without reference to the degree of care exercised, or of reasonable anticipation of an injury. The performance of the duty does not depend upon, nor is it controlled by, surrounding circumstances. One breaching a statutory duty cannot be heard to say that its breach was consonant with any degree of care. The statute itself charges one that its violation will result in an injury of the character sought to be prevented in its enactment."

See, also, 30 Tex. Jur. par. 69, p. 732; Waterman Lumber Co. v. Beatty, 110 Tex. 225, 218 S. W. 363.

■■ It is our conclusion that if Leary was in an unconscious state of mind and that the accident occurred solely by reason thereby, yet that fact constitutes no defense to plaintiff's suit; and further that the court did not err in failing to submit the issue of alleged negligence of Leary, since that was established by uncontroverted evidence.

The court instructed the jury that the burden was on plaintiff to establish by a preponderance of the evidence that the accident was not unavoidable, and that the burden was upon defendants to prove by a preponderance of the evidence that Leary was un-conscious as a result of physical ailment at and just prior to the accident, which unconscious condition was the sole proximate cause of the accident.

■ The evidence having shown conclusively that Leary violated the statutory provisions referred to already, the burden was upon defendants to overcome the presumption of negligence arising therefrom, which they attempted to do by testimony offered to show that Leary was unconscious as the result of a sudden ailment which was the sole proximate cause of the accident.

In the recent case of Houston & T. C. R. Co. v. Stevenson (Tex. Com. App.) 29 S.W. (2d) 995, 999, Justice Sharp said: "When plaintiff pleads and relies for recovery upon specific acts of negligence on the part of the defendant, and the case is submitted to the jury upon special issues, it is proper to instruct the jury as to those acts of negligence so charged and relied upon that the burden is upon the plaintiff to establish them by a preponderance of the evidence. When the defendant challenges the right of plaintiff to recover by reason of certain exceptions, and that by virtue of certain exceptions there is no liability on the part of the defendant, and special issues based upon such exceptions are submitted to the jury upon such special issues, it is proper to instruct the jury that the burden is upon the defendant to establish them by a preponderance of the evidence."

Furthermore, the court had already placed the burden of proof on plaintiff to show that the accident was not unavoidable; and further still, as already stated, even if the jury had found that Leary was suddenly attacked by some ailment which rendered him unconscious and therefore unable to control his machine, and that such condition of mind was the sole cause of the accident, that would have been no defense under the authorities cited and followed by us in this case.

All assignments of error are overruled, and the judgment of the trial court is affirmed.