Louis Sforza, Plaintiff, *v.* Green Bus Lines, Inc., and Another, Defendants.

Benjamin Mekay, Plaintiff, *v.* Green Bus Lines, Inc., and Another, Defendants.

Municipal Court of New York, Borough of Queens, Fourth District, January 19, 1934.

*Nathan Black*, for the plaintiff.

*A. Bertram Samuels* [*Albert Dupont* of counsel], for the defendant.

Pette, J.   While operating a bus owned by the corporate defendant, the individual defendant, who had been employed by the corporation eight years, suddenly became insane and apparently lost control of the bus which struck a parked ice truck owned by plaintiff Mekay, upon which plaintiff Sforza was chopping ice.   These actions follow to recover for property damage and personal injuries.

The driver was committed for observation and later confined in an insane asylum where he still remained at the time of the trial. Defendants do not deny negligence by the driver, but seek to excuse the negligence, claiming that the driver, having become insane just prior to the accident, was incapable of care, and hence is not responsible for damages, and that, therefore, the negligence may not be imputed to the company.

Defendants suggest that the insanity may have been produced by a state of mind on the part of LaSala, induced by his wife's expected motherhood that morning.   While the evidence as to the unusual and irrational acts of the driver at the time of and immediately following the accident are consistent with a finding that he

had become insane just prior to the accident, the facts negative any idea, and defendants do not claim, even if such a distinction exists in the law of torts as a finality (Burdick Torts [4th ed.], pp. 94, 95), that the insanity was due in any measure to his occupation or to his exhaustion or other physical or mental condition caused through devotion to duty or by his efforts to save the bus from peril, or to otherwise protect the interests of his employers or himself.

If the driver were sane, his acts in driving the bus into the truck, then at a standstill and out of the way, would constitute a tort of misfeasance, that is, a willful, negligent conduct which invaded the rights of plaintiffs to be secure in their person and property. Or, the driver may be deemed liable on the theory of non-feasance for failing to swerve the course of the bus to prevent a collision. For practical purposes, upon the facts at bar, the adoption of one theory or the other will not conflict with the result.

The authorities establish that an insane person is civilly liable for his torts, and whether the tort be one of non-feasance or misfeasance, does not seem to affect the liability which is grounded upon the damage caused by the tort. (*Williams* v. *Hays*, 143 N. Y. 442, 451.) In a well-written brief the defense urges that upon the second appeal of the same case (157 N. Y. 541), a distinction is made between torts of misfeasance and torts of non-feasance when committed by an insane person. I regret that I am unable to agree with that contention. What was said upon the second appeal (at p. 546) does not change, but confirms, the refusal in the first opinion to establish any different rule between negligence and affirmative conduct. All that the court said upon the second appeal (p. 546) has reference to an inquiry which the court did not then deem it necessary to make, as to whether a lunatic is liable " in all instances of non-feasance or failure to act." That is, the responsibility for the tort of misfeasance was left unquestioned, and it was only adverted that with respect to the tort of misfeasance there might be instances in which the insane person would not be held liable. Whatever rule may be ultimately established, I hold to the opinion that such a distinction would be unreal and unsubstantial, and if given judicial sanction, would readily induce an influx of simulated or pretended insanity, predicated upon a great variety of anomalous situations, which would work fraud and injustice. (*McIntyre* v. *Sholty*, 121 Ill. 660.) It is unfortunate, following the remarks of Cooley Torts ([4th ed.] § 65, p. 188), that one should be compelled to respond for that which, for want of the control of reason, he was unable to avoid; that " it is imposing upon a person already visited with the inexpressible calamity of mental obscurity

an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties." But, the author continues, " The question of liability in these cases, as well as others, is a question of policy and is to be disposed of as would the question whether the incompetent person is to be supported at the expense of the public, or of his neighbors, or at the expense of his own estate." The above statement of the rule was adopted in the *Hays* case upon the first appeal, and by later cases of which *Seals* v. *Snow* (123 Kan. 88; 254 Pac. 348; 51 A. L. R. 829) is a noteworthy illustration. The Kansas court there refers to the *Hays* case as a leading case among the " well-nigh unanimous and * * * firmly established " authorities upholding the doctrine.

The question left open by the second appeal (at p. 546), as to whether a lunatic is responsible in all cases of negligence, that is, omission or failure to act, is not now before the court for the reason that, not only is there no evidence in the case at bar as to how the insanity was occasioned, but also that upon the second appeal the court accepted the statement of the rule enunciated in the first appeal, after an exhaustive review of the authorities, to the effect that " if the defendant ' caused the destruction (of the vessel) by what in sane persons would be called willful or negligent conduct, the law holds him responsible.' " (*Williams* v. *Hays, supra,* second appeal, at p. 546.)

I, therefore, conclude that the defendant LaSala is legally responsible for the negligence which is imputable to the corporate defendant. Judgment is rendered against both defendants, in favor of plaintiff Sforza in the amount of $200 for personal injuries sustained by him, and in favor of the plaintiff Mekay in the amount of $225 for property damage. Ten days' stay.