Nicholas M. Pette, J.
This is an action for damages for the wrongful death of David M. Shapiro, deceased, tried before the court without a jury.
The action was instituted by Miriam Shapiro, as administratrix of the estate o'f said decedent to recover damages sustained by the dependent wife and children of said decedent, who was shot and instantly killed by the defendant, Jack Tchernowitz, in the home of the deceased, on the morning of June 15, 1953.
After the shooting, the defendant was indicted by a Queens County Grand Jury for murder in the first degree, and on August 19, 1953, pursuant to the provisions of section 662-b of the Code of Criminal Procedure, the Honorable William B. Groat, Queens County Judge, ordered the defendant committed to the Matteawan State Hospital at Beacon, New York, as an incompetent person, in which institution the defendant is presently confined awaiting such time as when he shall become mentally competent, if ever, to stand trial in the County Court of Queens County on the pending murder indictment lodged against him.
The deceased is survived by his wife, Miriam Shapiro, the said administratrix, who was about 42 years of age at the time of his death, and his two children, Shiela Zelda Shapiro, then about 13 years of age, and Gale Myrna Shapiro, who was then about 6 years old. The deceased was 42 years old when killed.
This court granted authority to said administratrix to bring and prosecute this action against the said mentally incompetent defendant, and appointed Michael Ruggiero, Esq., an attorney and counsellor at law, to accept service of the summons and complaint in this action and also appointed him as the special guardian ad litem for said incompetent defendant. Said special guardian ad litem has duly filed his report herein.
*619 Under section 130 of the Decedent Estate Law, the elements which must necessarily be present to enable an administrator to maintain an action for wrongful death, are the presence of surviving spouse or next of kin, the presence of a natural person or corporation whose wrongful act, neglect or default caused the death, and the allegation of a cause of action for injuries to the deceased which might have been maintained by the deceased by reason of such wrongful act, neglect or default had death not ensued. (Greco v. Kresge Co., 277 N. Y. 26.)
The complaint herein alleges all the facts necessary to give this court jurisdiction under the provisions of section 130 of the Decedent Estate Law, which the Court of Appeals, speaking of the scope of section 1902 of the Code of Civil Procedure, now section 130 of the Decedent Estate Law, says ‘ ‘ covers any action of trespass upon the person, which the deceased could have maintained if she had survived the accident.” (Sullivan v. Dunham, 161 N. Y. 290, 293.)
The plaintiff in her complaint alleges ‘ ‘ that on the 15th day of June, 1953, the said defendant, Jack Tchernowitz, intentionally, wilfully and/or negligently, wrongfully, and without just cause or provocation, shot and killed the plaintiff’s decedent with a revolver or similar gun, thereupon causing the death of said David M. Shapiro, all without any fault or contributory negligence on the part of the decedent herein.”
The special guardian ad litem for the defendant interposed a general denial to the complaint.
Although the defendant has been committed to Matteawan State Hospital for the criminal insane, the special guardian ad litem and this court are aware that the insanity of the defendant is not a defense to an action against him for wrongfully causing the death of the deceased. (Williams v. Hays, 143 N. Y. 442; Sforza v. Green Bus Lines, 150 Misc. 180; Elliott v. Sternberg, 61 N. Y. S. 2d 73.)
In the Williams case (143 N. Y. 442, 446, supra) Earl, J. says: “ The general rule is that an insane person is just as responsible for his torts as a sane person, and the rule applies to all torts, except perhaps those in which malice and, therefore, intention, actual or imputed, is a necessary ingredient, like libel, slander and malicious prosecution. In all other torts intention is not an ingredient, and the actor is responsible, although he acted with a good and even laudable purpose, without any malice. The law looks to the person damaged by another and seeks to make him whole, without reference to the purpose or the condition, mental or physical, of the person causing the damage”. In *620 the same case, the court quotes Cooley on Torts (p. 98): “ 1 A wrong is an invasion of right to the damage of the party who suffers it. It consists in the injury done, and not commonly in the purpose or mental or physical capacity of the person or agent doing it.’ ” And further quotes Cooley, page 100, as follows: “ ‘ Undoubtedly there is some appearance of hardship — even of injustice — in compelling one to respond for that which, for want of the control of reason, he was unable to avoid; that it is imposing upon a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in full possession of his faculties. But the question of liability in these cases, as well as in others, is a question of policy ’ ”.
From the foregoing quotation from the complaint in the case at bar, it appears that reference is made to intent and negligence, but the cause of action herein is essentially one to recover for the “wrongful death” of plaintiff’s intestate caused by the defendant’s negligent and wrongful shooting of the intestate. Furthermore, as was held in Williams v. Hays (supra) and in Krom v. Schoonmaker (3 Barb. 647), a lunatic may be sued for an injury to another, as the intent with which such injury is done is not material. Also the wrongful act referred to in section 130 of the Decedent Estate Law need not necessarily be based upon negligence of the party charged. (Schloendorff v. New York Hosp., 211 N. Y. 125; Griffin v. Bles, 202 App. Div. 443.) The wrongful act may be a trespass upon the person of the deceased, such as an assault by discharging missiles from a gun into the body of the deceased, causing wounds from which he died.
To sustain an action for wrongful death under section 130 of the Decedent Estate Law, the wrongful act, neglect or default must have been the proximate cause of the death. (Salsedo v. Palmer, 278 F. 92.) And to quote from Laidlaw v. Sage (158 N. Y. 73, 99): “ ‘ The proximate cause of an event must be understood to be that which, in a natural and continuous sequence, unbroken by any new cause, produces that event, and without which that event would not have occurred. ’ ”
Upon the trial of this action, Mr. Ruggiero thoroughly cross-examined plaintiff’s witnesses and endeavored to fully safeguard the rights of the defendant by excluding evidence of any incompetent, irrelevant and immaterial matter. No defense was pleaded or offered on behalf of the defendant, and the defendant was advisedly not produced as a witness in his own behalf because of his mental incompetency and the reluctance of the special *621 guardian ad litem to subject Mm to the ordeal of a trial and expose him to any possibility of impairing or jeopardizing any defense he could have to the pending murder indictment against him in the County Court. At the close of the plaintiff’s case, both sides rested, and the case was submitted to the court on the plaintiff’s evidence alone.
The defendant having failed to plead and offer proof of the contributory negligence on the part of the deceased, that issue is not in this case for the court to determine, since it is not incumbent upon the plaintiff in a death action to prove decedent’s freedom from contributory negligence, that being a matter of defense to be alleged and proved by the defendant (Schrader v. New York, Chicago & St. Louis R. R. Co., 254 N. Y. 148; Decedent Estate Law, § 131).
The uncontradicted proof before this court has established the following facts: That about 9:45 in the morning of June 15, 1953, a Monday, without just cause or provocation on the part of the deceased, the defendant negligently and wrongfully shot and instantly killed the plaintiff’s intestate in the kitchen of the home of said deceased, while decedent’s wife and child were in the adjoining dining room straightening up a lot of toys in the child’s doll carriage. The wife testified that she saw the defendant standing at the door, holding the porch door, with a gun in Ms hand and shooting, and that one shot hit the stove, and that the deceased lay on the kitchen floor and could not talk to her because he was already dead. An assistant medical examiner of the Department of Health of the City of New York testified that the deceased was identified to him by Ben Wittenberg, a brother-in-law of the deceased, as the deceased lay supine on the kitchen floor of his home at 76-44 169 Street, FlusMng, this county, at which time multiple wounds could be seen; he testified that an autopsy was performed upon the body of the deceased at the Queens Borough Mortuary which revealed that the cause of the decedent’s death was hemothorax and hemoperitoneum due to gunshot wounds of his abdomen and chest. The deceased was also identified by his sister, Rebecca Wittenberg, who testified that she saw the deceased lying on the kitchen floor of his home and that he was dead, and that thereafter she saw Mm in a casket and she attended his burial.
The uncontradicted proof in this case establishes, and the court finds, that the death of plaintiff’s intestate was caused by the negligent wrongful act of the defendant in discharging from Ms gun bullets which entered the body of the deceased and inflicted gunshot wounds in the abdomen and chest causing hemothorax and hemoperitoneum; and that said negligent *622 wrongful act was the proximate cause of the wrongful death of the deceased. On all the evidence, the court finds that the plaintiff is entitled to the sum of $100,481.50, as compensatory pecuniary damages for the wrongful death of the deceased and for out-of-pocket expenses.
The allowance to the special guardian ad litem for his services will be fixed in an order to he settled on notice and will provide that it will be paid from the proceeds of any judgment recovered by plaintiff.
This is the decision of the court in accordance with section 440 of the Civil Practice Act.