BREUNIG, Respondent, v. AMERICAN FAMILY INSURANCE COMPANY, Appellant.

*No. 43. Argued January 6, 1970.—Decided February 3, 1970.*
(Also reported in 173 N. W. 2d 619.)

538

For the appellant there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

For the respondent there was a brief by *Oldenburg & Lent* of Madison, and oral argument by *Hugh F. Oldenburg*.

HALLOWS, C. J.   There is no question that Erma Veith was subject at the time of the accident to an insane delusion which directly affected her ability to operate her car in an ordinarily prudent manner and caused the accident.  The specific question considered by the jury under the negligence inquiry was whether she had such foreknowledge of her susceptibility to such a mental aberration, delusion or hallucination as to make her negligent in driving a car at all under such conditions.

At the trial Erma Veith testified she could not remember all the circumstances of the accident and this was confirmed by her psychiatrist who testified this loss of memory was due to his treatment of Erma Veith for her mental illness.  This expert also testified to what Erma Veith had told him but could no longer recall.  The evidence established that Mrs. Veith, while returning home after taking her husband to work, saw a white light on the back of a car ahead of her.  She followed this light for three or four blocks.  Mrs. Veith did not remember anything else except landing in a field, lying on the side of the road and people talking.  She recalled awaking in the hospital.

The psychiatrist testified Mrs. Veith told him she was driving on a road when she believed that God was taking ahold of the steering wheel and was directing her car. She saw the truck coming and stepped on the gas in order to become airborne because she knew she could fly because Batman does it.  To her surprise she was not airborne before striking the truck but after the impact she was flying.

Actually, Mrs. Veith's car continued west on Highway 19 for about a mile. The road was straight for this distance and then made a gradual turn to the right. At this turn her car left the road in a straight line, negotiated a deep ditch and came to rest in a cornfield. When a traffic officer came to the car to investigate the accident, he found Mrs. Veith sitting behind the wheel looking off into space. He could not get a statement of any kind from her. She was taken to the Methodist Hospital and later transferred to the psychiatric ward of the Madison General Hospital.

The psychiatrist testified Erma Veith was suffering from "schizophrenic reaction, paranoid type, acute." [1] He stated that from the time Mrs. Veith commenced following the car with the white light and ending with the stopping of her vehicle in the cornfield, she was not able to operate the vehicle with her conscious mind and that she had no knowledge or forewarning that such illness or disability would likely occur.

The insurance company argues Erma Veith was not negligent as a matter of law because there is no evidence upon which the jury could find that she had knowledge or warning or should have reasonably foreseen that she might be subject to a mental delusion which would suddenly cause her to lose control of the car. Plaintiff argues there was such evidence of forewarning and also suggests Erma Veith should be liable because insanity should not be a defense in negligence cases.

The case was tried on the theory that some forms of insanity are a defense to and preclude liability for negli-

---

[1] In layman's language, the doctor explained: "The schizophrenic reaction is a thinking disorder of a severe type usually implying disorientation with the world. Usually implying a break with reality. The paranoid type is a subdivision of the thinking disorder in which one perceives oneself either as a very powerful or being persecuted or being attacked by other people. And acute implies that the rapidity of the onset of the illness, the speed of onset is meant by acute."

gence under the doctrine of *Theisen v. Milwaukee Automobile Mut. Ins. Co.* (1962), 18 Wis. 2d 91, 118 N. W. 2d 140, 119 N. W. 2d 393. We agree. Not all types of insanity vitiate responsibility for a negligent tort. The question of liability in every case must depend upon the kind and nature of the insanity. The effect of the mental illness or mental hallucinations or disorder must be such as to affect the person's ability to understand and appreciate the duty which rests upon him to drive his car with ordinary care, or if the insanity does not affect such understanding and appreciation, it must affect his ability to control his car in an ordinarily prudent manner. And in addition, there must be an absence of notice or forewarning to the person that he may be suddenly subject to such a type of insanity or mental illness.

In *Theisen* we recognized one was not negligent if he was unable to conform his conduct through no fault of his own but held a sleeping driver negligent as a matter of law because one is always given conscious warnings of drowsiness and if a person does not heed such warnings and continues to drive his car, he is negligent for continuing to drive under such conditions. But we distinguished those exceptional cases of loss of consciousness resulting from injury inflicted by an outside force, or fainting, or heart attack, or epileptic seizure, or other illness which suddenly incapacitates the driver of an automobile when the occurrence of such disability is not attended with sufficient warning or should not have been reasonably foreseen.

*Theisen* followed *Eleason v. Western Casualty & Surety Co.* (1948), 254 Wis. 134, 135 N. W. 2d 301, and *Wisconsin Natural Gas Co. v. Employers Mut. Liability Ins. Co.* (1953), 263 Wis. 633, 58 N. W. 2d 424. In *Eleason* we held the driver, an epileptic, possessed knowledge that he was likely to have a seizure and therefore was negligent in driving a car and responsible for the accident occurring while he had an epileptic seizure. In *Wisconsin Natural*

*Gas Co. v. Employers Mut. Liability Ins. Co., supra,*
the sleeping driver possessed knowledge that he was likely
to fall asleep and his attempts to stay awake were not
sufficient to relieve him of negligence because it was
within his control to take effective means to stay awake
or cease driving.

There are authorities which generally hold insanity is
not a defense in tort cases except for intentional torts.
Restatement, 2 *Torts*, 2d, p. 16, sec. 283 B, and appendix
(1966) and cases cited therein. These cases rest on the
historical view of strict liability without regard to the
fault of the individual. Prosser, in his *Law of Torts*
(3d ed.), p. 1028, states this view is a historical survival
which originated in the dictum in *Weaver v. Ward*
(1616), Hob. 134, 80 English Reports 284, when the
action of trespass still rested upon strict liability. He
points out that when the modern law developed to the
point of holding the defendant liable for negligence, the
dictum was repeated in some cases.[2]

The policy basis of holding a permanently insane person
liable for his tort is: (1) Where one of two innocent per-
sons must suffer a loss it should be borne by the one who
occasioned it; (2) to induce those interested in the estate
of the insane person (if he has one) to restrain and
control him; and (3) the fear an insanity defense would
lead to false claims of insanity to avoid liability. These
three grounds were mentioned in the *Guardianship of
Meyer* (1935), 218 Wis. 381, 261 N. W. 211, where a farm
hand who was insane set fire to his employer's barn.
The insurance company paid the loss and filed a claim
against the estate of the insane person and was allowed
to recover.

In an earlier Wisconsin case involving arson, the same
view was taken. *Karow v. Continental Ins. Co.* (1883),

[2] *See Seals v. Snow* (1927), 123 Kan. 88, 90, 254 Pac. 348, 349,
51 A. L. R. 829; *Beals v. See* (1848), 10 Pa. 56, 61; *Williams v.
Hays* (1894), 143 N. Y. 442, 447, 38 N. E. 449, 450.

57 Wis. 56, 64, 15 N. W. 27, 30. But it was said in *Karow* that an insane person cannot be said to be negligent. The cases holding an insane person liable for his torts have generally dealt with pre-existing insanity of a permanent nature and the question here presented was neither discussed nor decided. The plaintiff cites *Sforza v. Green Bus Lines, Inc.* (1934), 150 Misc. 180, 268 N. Y. Supp. 446; *Shapiro v. Tchernowitz* (1956), 3 Misc. 2d 617, 155 N. Y. Supp. 2d 1011; *Johnson v. Lambotte* (1961), 147 Colo. 203, 363 Pac. 2d 165, for holding insanity is not a defense in negligence cases. *Sforza* and *Shapiro* are New York trial court decisions which do not discuss the question here presented and are unconvincing. In *Johnson,* the defendant was under observation by order of the county court and was being treated in a hospital for "chronic schizophrenic state of paranoid type." On the day in question, she wanted to leave the hospital and escaped therefrom and found an automobile standing on a street with its motor running a few blocks from the hospital. She got into the car and drove off, having little or no control of the car. She soon collided with the plaintiff. Later she was adjudged mentally incompetent and committed to a state hospital. *Johnson* is not a case of sudden mental seizure with no forewarning. The defendant knew she was being treated for a mental disorder and hence would not have come under the nonliability rule herein stated.

We think the statement that insanity is no defense is too broad when it is applied to a negligence case where the driver is suddenly overcome without forewarning by a mental disability or disorder which incapacitates him from conforming his conduct to the standards of a reasonable man under like circumstances. These are rare cases indeed, but their rarity is no reason for overlooking their existence and the justification which is the basis of the whole doctrine of liability for negligence, *i.e.*, that it is unjust to hold a man responsible for his conduct which he

is incapable of avoiding and which incapability was unknown to him prior to the accident.

We need not reach the question of contributory negligence of an insane person or the question of comparative negligence as those problems are not now presented.[3] All we hold is that a sudden mental incapacity equivalent in its effect to such physical causes as a sudden heart attack, epileptic seizure, stroke, or fainting should be treated alike and not under the general rule of insanity.

An interesting case holding this view in Canada is *Buckley & Toronto Transportation Comm. v. Smith Transport,* 1946 Ont. Rep. 798, 4 Dom. L. Rep. 721, which is almost identical on the facts with the case at bar. There, the court found no negligence when a truck driver was overcome by a sudden insane delusion that his truck was being operated by remote control of his employer and as a result he was in fact helpless to avert a collision.

The insurance company argues that since the psychiatrist was the only expert witness who testified concerning the mental disability of Mrs. Veith and the lack of forewarning that as a matter of law there was no forewarning and she could not be held negligent; and the trial court should have so held. While there was testimony of friends indicating she was normal for some months prior to the accident, the psychiatrist testified the origin of her mental illness appeared in August, 1965, prior to the accident. In that month Mrs. Veith visited the Necedah Shrine where she was told the Blessed Virgin had sent her to the shrine. She was told to pray for survival. Since that time she felt it had been revealed to her the end of the world was coming and that she was picked by God to survive. Later she had visions of God judging people and sentencing them to Heaven or Hell; she thought Batman was good and was trying to help save the

---

[3] *But see* Campbell, *Recent Developments of Tort Law in Wisconsin,* p. 4, The Institute of Continuing Legal Education.

world and her husband was possessed of the devil. Mrs. Veith told her daughter about her visions.

The question is whether she had warning or knowledge which would reasonably lead her to believe that hallucinations would occur and be such as to affect her driving an automobile. Even though the doctor's testimony is uncontradicted, it need not be accepted by the jury. It is an expert's opinion but it is not conclusive. It is for the jury to decide whether the facts underpinning an expert opinion are true. *Dreher v. United Commercial Travelers* (1921), 173 Wis. 173, 179, 180 N. W. 815; *Bucher v. Wisconsin Central Ry.* (1909), 139 Wis. 597, 611, 120 N. W. 518; *Massachusetts Bonding & Ins. Co. v. Industrial Comm.* (1959), 8 Wis. 2d 606, 610, 99 N. W. 2d 809. The jury could find that a woman, who believed she had a special relationship to God and was the chosen one to survive the end of the world, could believe that God would take over the direction of her life to the extent of driving her car. Since these mental aberrations were not constant, the jury could infer she had knowledge of her condition and the likelihood of a hallucination just as one who has knowledge of a heart condition knows the possibility of an attack. While the evidence may not be strong upon which to base an inference, especially in view of the fact that two jurors dissented on this verdict and expressly stated they could find no evidence of forewarning, nevertheless, the evidence to sustain the verdict of the jury need not constitute the great weight and clear preponderance.

The insurance company claims the jury was perverse because the verdict is contrary both to the evidence and to the law. We think this argument is without merit. For a verdict to be perverse, there must be something to warrant a finding that considerations which were ulterior to a reasonably fair application of the judgment of the jury to the evidence under the court's instructions

controlled or materially influenced the jury. *Brown v. Montgomery Ward & Co.* (1936), 221 Wis. 628, 267 N. W. 292; *see Grammoll v. Last* (1935), 218 Wis. 621, 261 N. W. 719.

It is argued the jury was aware of the effect of its answer to the negligence question because the jury after it started to deliberate asked the court the following question: "If Mrs. Veith is found not negligent, will it mean Mr. Breunig will receive no compensation?" The jury was not instructed on the effect of its answer. It has not been held that because a jury knew the effect of its answer that its verdict was perverse. Lawyers and judges are not so naive as to believe that most juries do not know the effect of their answers. The error is in instructing or telling the jury the effect of their answer with the exception which was made by this court on the basis of public policy in *State v. Shoffner* (1966), 31 Wis. 2d 412, 143 N. W. 2d 458, wherein we stated that it was proper for the court when the issue of insanity is litigated in a criminal case to tell the jury that the defendant will not go free if he is found not guilty by reason of insanity.

The defendant insurance company argues it did not receive a fair trial because: (1) The court engaged in extensive questioning of witnesses which amounted to interference; and (2) the court's manner during the trial indicated to the jury his disapproval of the defense. It is true the court interjected itself into the questioning of witnesses. In some instances the court was trying to clarify medical testimony but in other instances the court interjected itself more than was necessary under the circumstances. However, this is not necessarily a basis for reversal. A trial judge is not a mere moderator or a referee; but conversely, his duty is not to try the case but to hear it. He must control the conduct of the trial but he is not responsible for the proof. We have also said that litigants are entitled to a fair trial but the judge does not have to enjoy giving it. *Keplin v. Hardware Mut.*

*Casualty Co.* (1964), 24 Wis. 2d 319, 129 N. W. 2d 321, 130 N. W. 2d 3.

That seems to be the situation in the instant case. At the initial conference in chambers outside the presence of the jury, the trial judge made it clear he had no sympathy with the defendant's position and criticized the company for letting the case go to trial rather than paying the claim. On other occasions, outside the hearing of the jury, the court evidenced his displeasure with the defense and expressed his opinion that the insurance company should have paid the claim. However, he stated he was going to try not to say a word before the jury which would hint that the insurance company was "chincy." The trial judge may have been upset in chambers but he was careful not to go back on the bench until he had regained his composure.

The responsibility for an atmosphere of impartiality during the course of a trial rests upon the trial judge. His conduct in hearing the case must be fair to both sides and he should refrain from remarks which might injure either of the parties to the litigation. *Hansen v. St. Paul City Ry.* (1950), 231 Minn. 354, 43 N. W. 2d 260. Since a trial is and should be an adversary proceeding, the trial judge should take care not to be thrown off balance by his own emotions or by provocations of counsel. Because of the tremendous influence which the trial judge has on the jury by his conduct, his facial expressions, his inflexion in the pronouncement of words, and his asking questions of a witness, it is most important for a judge to be sensitive to his conduct. *Swonger v. Celentano* (1962), 17 Wis. 2d 303, 116 N. W. 2d 117.

Most judges do their utmost to maintain a poker face, an unperturbable mind and a noncommittal attitude during a contested trial, but judges are human and their emotions are influenced by the same human feelings as other people. Perhaps no judge during a hard-fought

trial can remain completely indifferent, especially if the case is one which he thinks ought not to be tried.

In respect to the excessive examination by the court of the witnesses we think there is no ground for reversal although we do not approve of the procedure. *See Reuling v. Chicago, St. P., M. & O. Ry.* (1950), 257 Wis. 485, 44 N. W. 2d 253. In respect to remarks of the judge, these were out of hearing of the jury and, consequently, to prejudice the jury there must be some evidence in the record that the jury "got the word."

The insurance company seems to argue the judge admitted on motions after verdict that the jury got the word when he said, "You will have to find it in the record, you will have to put my facial expressions into the record some way." This statement is not an admission by the judge that he did by facial expressions indicate to the jury his feelings of the case. He expressly stated he thought he did not reveal his convictions during the trial. The judge's statement went to the type of proof necessary to be in the record on appeal.

Misconduct of a trial judge must find its proof in the record. The cold record on appeal fails to record the impressions received by those present in the courtroom. Facial expression, tonal quality, stares, smiles, sneers, raised eyebrows, which convey meaning and perhaps have more power than words to transmit a general attitude of mind are lost when testimony is put in writing. Facial expressions and gestures of a judge cannot appear in a record on appeal unless the trial lawyer makes them part of the record in some way. Like alleged errors, counsel should, when objectionable expressions and gestures occur, ask to make a record thereof and take exception to the tone, facial expression and gesture, give a proper description thereof, and perhaps move if serious for a mistrial. This court would be speculating if it were to say that this jury was prejudiced when we do not know what they saw or what they felt about the conduct of the trial by the trial judge.

On motions after verdict the court reduced the damages from $10,000 to $7,000 and gave the plaintiff an "election, within 30 days, to accept the judgment in the sum of $7,000 plus costs or in the alternative a new trial." This is not quite the form this court has now recommended to apply the *Powers* rule. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393. *See Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 117 N. W. 2d 660; modified in *Wells v. National Indemnity Co.* (1968), 41 Wis. 2d 1, 162 N. W. 2d 562. We have said several times that the order should grant a new trial unless within a given time the plaintiff is willing to accept the reduced amount and file a remittitur. In the present case there was no requirement to do this in writing. The plaintiff orally elected to accept the lower amount within the thirty days but filed no written remittitur. Subsequently, the trial court allowed the filing of the remittitur and judgment accordingly was entered upon the reduced verdict. We think it is within the discretion of the trial court in view of the way in which the option was formulated to allow the plaintiff to comply with the formal requirements of filing a remittitur when the plaintiff had notified counsel and the court orally that he would accept the option.

The plaintiff by way of review argues that the court erred in reducing the damages awarded from $10,000 to $7,000. Although the plaintiff has accepted the reduction of damages, he may have this court review the trial court's ruling when the defendant appeals. *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. 2d 571, 127 N. W. 2d 741; *Bash v. Employers Mut. Liability Ins. Co.* (1968), 38 Wis. 2d 440, 157 N. W. 2d 634. No good purpose would be served in extending this opinion with a review of the evidence concerning damages. The trial court's finding that a jury's award is excessive or inadequate will be reversed only when this court can find an abuse of discretion. *Lucas v. State Farm Mut. Automobile Ins. Co., supra; Moritz v. Allied American Mut.*

*Fire Ins. Co.* (1965), 27 Wis. 2d 13, 133 N. W. 2d 235. Since the trial court did not analyze the evidence, it was incumbent upon this court to review the testimony relating to damages. We think $10,000 is not sustained by the evidence. It is immaterial that the trial court in reducing the damages to $7,000 gave a reason which would not sustain the reduction.

*By the Court.*—Judgment affirmed.