124 P.3d 314 (2005)
130 Wash.App. 672
Lanette RAMEY, Respondent,
v.
William KNORR and Nancy Knorr, husband and wife, Appellants.
No. 55397-6-I.
Court of Appeals of Washington, Division 1.
October 17, 2005.
Publication Ordered December 1, 2005.
*316 Andrew James Kinstler, Kristen Dorrity, Helsell Fetterman LLP, Seattle, WA, for Appellants.
J.D. Smith, Colin J. Folawn, Gordon, Thomas, Honeywell et al., Seattle, WA, for Respondent.
COX, C.J.
¶ 1 Insanity and other mental incapacities are not generally recognized as defenses to a claim of negligence.[1] Some jurisdictions permit a limited exception to this rule by permitting sudden mental incapacity as a defense for a tortfeasor.[2] This defense requires a defendant to establish "(1) [they had] no prior notice or forewarning of [their] potential for becoming disabled, and (2) the disability renders [them] incapable of conforming to the standards of ordinary care."[3] We hold that there is no legally sufficient evidentiary basis for a jury to find that Nancy Knorr ("Knorr") was entitled to the defense of sudden mental incapacity. Thus, the trial court properly granted Lanette Ramey's motion for judgment as a matter of law. Moreover, the court properly exercised its discretion in refusing the jury instructions Knorr offered and in giving the jury instructions that it gave. We also hold that the trial court correctly denied Knorr's motion for summary judgment as well as her alternative post-trial motions. We affirm.
¶ 2 This personal injury action arises from a head-on automobile collision on I-405. While in a delusional state, Knorr turned her car around towards oncoming traffic, removed her seatbelt, and drove head-on into Ramey's car. At the time of the incident, Knorr believed she was the object of a conspiracy *317 to attack her. She was trying to commit suicide.
¶ 3 Ramey suffered substantial injuries from the collision. She sued Knorr for negligence. Knorr raised the defense of sudden mental incapacity.
¶ 4 Pre-trial, the trial court denied Knorr's motion for summary judgment. At the close of all the evidence at trial, both Knorr and Ramey moved for directed verdicts. The trial court granted a directed verdict for Ramey, ruling that as a matter of law, Knorr's sudden mental incapacity defense could not be sustained on the basis of the evidence. The jury returned a verdict for Ramey in the amount of $497,578.00. The trial court denied Knorr's post-trial motion for judgment as a matter of law or, alternatively, a new trial.
¶ 5 Following entry of judgment on the jury verdict, Knorr appealed.

CR 50 MOTIONS
¶ 6 Knorr argues that the trial court erred in denying her motions for a judgment as a matter of law and in granting Ramey's motion for a directed verdict. We disagree.
¶ 7 A directed verdict may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue."[4] A motion for a directed verdict admits the truth of the evidence of the non-moving party and all inferences that reasonably can be drawn therefrom.[5] The evidence must be considered in the light most favorable to the nonmoving party.[6] The trial court may grant a directed verdict only when it can be held that as a matter of law, there is no evidence, nor reasonable inferences from the evidence, to sustain the verdict.[7] This court reviews a motion for a directed verdict de novo.[8]

Insanity and Other Mental Deficiencies as Defenses
¶ 8 Both for historical and other reasons, insanity or other mental deficiencies generally are not recognized as defenses to negligence.[9] Washington, along with the majority of states, holds the mentally ill to the standard of a reasonable person under like circumstances.[10]
¶ 9 Traditionally, courts have relied on several rationales to hold the mentally ill to an objective standard of liability for negligence. The most common justification is that innocent victims should be compensated for their injuries.[11] Another common reason is that the existence and degree of one's mental illness can be difficult to measure and is a major obstacle for applying a mental deficiency defense.[12] Other rationales include the belief that liability of the mentally ill will encourage caretakers to look after them and the difficulty of drawing a line between mental illness and variations of temperaments, intellect, and emotional balance.[13]
¶ 10 Knorr expressly disclaims an insanity defense or an argument that mental illness alone is a defense to negligence. Instead, she maintains that "a driver who suffers an acute psychotic episode, which incapacitates *318 the driver, is not chargeable with negligence." While noting that Washington has not addressed this issue, Knorr primarily relies on authority from the state of Wisconsin, Breunig v. American Family Ins. Co.[14] Accordingly, we consider whether that case is applicable to the matter before us.

"Sudden Mental Incapacity" Defense
¶ 11 In Breunig, the defendant, Erma Veith was driving her car when she believed that God was taking control of the steering wheel and directing her car.[15] Believing she could fly "because Batman can," Mrs. Veith stepped on the gas and collided with an oncoming truck.[16] At trial, a psychiatrist testified that Mrs. Veith was unable to operate the vehicle with her conscious mind.[17] A jury returned a verdict in the plaintiff's favor.
¶ 12 The Wisconsin Supreme Court in Breunig recognized an exception for sudden mental incapacity and adopted a two part test stating,
[the] disorder must be such as to [1(a)] affect the person's ability to understand and appreciate the duty which rests upon him to drive his car with ordinary care, or [1(b)] if the insanity does not affect such understanding and appreciation, it must affect his ability to control his car in an ordinarily prudent manner. And ... [2] there must be an absence of notice or forewarning to the person that he may be suddenly subject to such a type of insanity or mental illness.[[18]]
The Breunig test was further explained by the same court in Jankee v. Clark County.[19] Sudden mental incapacity is a "rare exception [and] applies only when two conditions are met: (1) the person has no prior notice or forewarning of his or her potential for becoming disabled, and (2) the disability renders the person incapable of conforming to the standards of ordinary care."[20]
¶ 13 The Breunig court upheld the jury's verdict, finding Mrs. Veith did have knowledge or forewarning that her hallucinations could affect her driving.[21] Mrs. Veith had previously experienced delusional visions and should have known she posed a risk to others if she drove.[22] The Wisconsin Supreme Court later limited the Breunig rule stating, "`[a]ll we hold is that a sudden mental incapacity equivalent in its effect to such physical causes as a sudden heart attack, epileptic seizure, stroke, or fainting should be treated alike and not under the general rule of insanity.'"[23]

Absence of Notice or Forewarning
¶ 14 Whether Knorr had notice or forewarning that her paranoia could affect her driving is the more difficult question presented. In order to meet the first prong of sudden mental incapacity, the defendant must have "no prior notice or forewarning of his or her potential for becoming disabled."[24]
¶ 15 The standard of whether a defendant had notice or forewarning of the mental incapacity depends on whether the defendant had any forewarning or knowledge of a prior mental disability or disorder that incapacitates him from conforming his conduct to the standard of care.[25] The driver must have been incapable of knowing that a mental *319 incapacity could occur while driving, preventing the driver from avoiding a collision.[26]
¶ 16 Whether a person has knowledge or forewarning of their condition is based on an objective standard.[27] When the occurrence of an illness or loss of consciousness should have been reasonably foreseen by a person of ordinary intelligence and prudence, the driver of a motor vehicle is negligent as a matter of law.[28] "The negligence is not in the manner of driving but rather in driving at all, if the person should reasonably have foreseen that the illness or lack of consciousness might occur and affect the person's manner of driving."[29]
¶ 17 The Wisconsin cases provide several examples defining notice and forewarning. In Jankee, the court declared that forewarning exists when a person is under the treatment of medication.[30] The court discussed Stuyvesant Assoc. v. John Doe[31] to illustrate when forewarning is satisfied with regard to taking medication. In Stuyvesant Assoc., a schizophrenic man was receiving injections every other week for his illness and knew if he missed an injection, deterioration would result.[32] The defendant also knew of the risks he posed if he fell into a psychotic state.[33] The defendant missed an appointment for his medication and committed vandalism while in a psychotic state.[34] "The court held the defendant to an objective standard of care and found him liable, reasoning that the patient was cognizant of his condition and the risks posed by refraining from the medication . . . ."[35]
¶ 18 In Johnson v. Lambotte, the defendant was being treated for "chronic schizophrenic state of paranoid type" when she left the hospital and having little or no apparent control of her vehicle, collided with another car.[36] In Breunig, the court stated that "Johnson is not a case of sudden mental seizure with no forewarning [because the] defendant knew she was being treated for a mental disorder and hence would not have come under the nonliability rule herein stated."[37]
¶ 19 In addition, symptoms of a mental disability provide adequate notice and forewarning. In Breunig, Mrs. Veith was found to have had notice and forewarning of her mental condition because she had previously experienced delusional visions.[38] The issue of forewarning went to the jury in Breunig because there was not substantial evidence whether Mrs. Veith had knowledge or forewarning.[39] Mrs. Veith was not previously treated for a mental disorder and her friends testified that she was normal for some months prior to the accident.
¶ 20 In the case at hand, Knorr does not meet the test of sudden mental incapacity because the evidence clearly establishes she had notice and forewarning of her mental condition. The testimony at trial showed that in 1994, Knorr had a mental breakdown and was hospitalized for ten days. During that period, Knorr believed the person she worked for was conspiring to steal her and her husband's assets, was going to kill them, and was poisoning her. She also had concerns about her brother being a murderer. *320 The delusions escalated to a point where she believed the neighbors were part of this scheme of "taking them out." Knorr was diagnosed with possible delusional disorder, was put on medication, and was advised to see a psychiatrist.
¶ 21 When Knorr was released from the hospital she was given Lithium along with other medication, which helped end her delusional thoughts. The hospital directed Knorr to see a psychiatrist and she saw Dr. McConnaughy. After three months, Knorr quit seeing Dr. McConnaughy and quit taking her medication. Knorr testified at trial that in July of 1994, she "started to get real anxious again" and had to go back to the hospital. At the admittance office, Knorr "started snapping out of it" and decided to go back home and see how she felt. When Knorr returned home she felt fine and no longer had anxiety or other symptoms until 2001.
¶ 22 The testimony at trial further showed that beginning in March 2001, Knorr's delusional thoughts about her brother being a murderer came back. Knorr and her family testified that by November 2001, her thoughts escalated and Mr. Knorr tried to get her to agree to go to the hospital. Knorr wanted to wait until after the holidays to go to the hospital and had an appointment scheduled for two days after the accident.
¶ 23 The day before the accident Knorr believed intruders were coming to her house and were going to kidnap her and her husband and rape them. The morning of the accident a friend offered to take Knorr to the hospital, but she refused to go. At trial, Dr. Young testified that people with delusional beliefs almost never believe something is wrong with them. He further testified that on the day of the accident, Knorr's delusional beliefs caused her to panic, and "it's at that point that erratic or dangerous behavior can occur." Dr. Young testified that Knorr's delusional beliefs that caused her to panic were "relatively sudden."
¶ 24 The trial court concluded that under Breunig and Johnson, Knorr had forewarning because she knew she had been treated for a mental condition in 1994 and chose not to continue with the medication, and therefore did not fall within the sudden mental incapacity exception. We agree. We note further that the episodes continued and existed in this case as recently as the day preceding the auto collision. The record shows that Knorr was forewarned of the condition that again arose on the day of the accident.
¶ 25 Knorr heavily relies on the expert testimony of Dr. Young, which she describes as "unrebutted." However, the question before the court at the time of the motions was whether there was a legally sufficient evidentiary basis to allow the defense. The court was neither required to only consider the evidence of the expert nor to believe that evidence.
¶ 26 More importantly, when one views the testimony by Dr. Young and the other witnesses in the light most favorable to Knorr, there is substantial evidence to conclude that Knorr had knowledge and forewarning of her mental disorder. Knorr was treated for delusional beliefs in 1994, decided to stop that treatment, including taking her medication, began experiencing delusions again almost a year prior to the accident, and had ample opportunity to go to the hospital and seek help. Knorr also agreed to go to the hospital, which further supports her knowledge of her mental disorder. Therefore, the trial court properly granted a directed verdict in favor of Ramey.
¶ 27 Although Knorr had no history of being dangerous or violent, or any problems with her driving, that is not required under Breunig. Knorr experienced delusional beliefs for several months prior to the accident and believed the night before the accident that intruders were going to come into her family's home and rape and kill them. Under an objective standard, a reasonable person would have foreseen that Knorr's mental condition could affect her driving. Therefore, Knorr's mental incapacity while driving was foreseeable.

Incapable of Conforming to Standards of Ordinary Care
¶ 28 Addressing the other prong of sudden mental incapacity, the Breunig court stated:
[the] disorder must be such as to affect the person's ability to understand and appreciate *321 the duty which rests upon him to drive his car with ordinary care, or if the insanity does not affect such understanding and appreciation, it must affect his ability to control his car in an ordinarily prudent manner.[[40]]
The court in Jankee later clarified the rule from Breunig and stated "the disability [must] render[] the person incapable of conforming to the standards of ordinary care."[41]
¶ 29 Ramey argues that because Knorr did not lose physical control of her vehicle, she does not meet the second prong of Breunig. However, lack of ordinary care does not only require loss of physical capacity. Lack of ordinary care occurs when there is either an inability to understand and appreciate the duty to drive with ordinary care, or an inability to control the vehicle with ordinary care.[42] Although Knorr was in physical control of her vehicle, her delusional beliefs prevented her from understanding and appreciating her duty to drive with ordinary care. Because Knorr was mentally incapable of conforming to the standards of ordinary care while driving, she meets the second prong of Breunig.
¶ 30 Knorr relies, in part, on Washington authority that holds that, "[a] driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence."[43] In Kaiser v. Suburban Transp. Sys., the doctor did not warn the driver of a bus of the side effects of drowsiness or lassitude, and the court held the driver could not be liable for negligence unless he had "knowledge of the pill's harmful qualities."[44] The general rule from Kaiser applies only to a sudden physical incapacity or loss of consciousness that is unforeseeable, and has never applied to a mental incapacity with no loss of consciousness.[45]Kaiser is not applicable to the case before us because Knorr remained in physical control of her vehicle and never lost consciousness.
¶ 31 Furthermore, Knorr relies on Sofie v. Fibreboard Corp.[46] to argue the trial court violated her constitutional right to a jury trial by deciding as a matter of law that her mental incapacity was not sudden. Knorr contends that under Sofie all disputed issues of fact must be decided by a jury.[47] Knorr further argues that because pre-trial the trial court ruled there was an issue of fact whether Knorr's mental incapacity was sudden, the issue should have been sent to a jury.
¶ 32 Knorr's argument is misplaced. First, Sofie held there was a constitutional right for the jury to determine the amount of noneconomic damages.[48] Second, whether there is substantial evidence to create an issue of fact for the jury is a question of law.[49] After hearing all of the evidence, the trial court properly ruled as a matter of law that there was not substantial evidence to present an issue of fact for the jury under the sudden mental incapacity defense.

SUMMARY JUDGMENT
¶ 33 Knorr next argues that the trial court erred in denying her motion for summary judgment. We disagree.
¶ 34 A motion for summary judgment may be granted when there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[50] The standard of review for a summary judgment order is de novo, applying the same inquiry as the trial court, and viewing the facts and reasonable inferences *322 in the light most favorable to the nonmoving party.[51]
¶ 35 Both Ramey and Knorr moved for summary judgment and the trial court denied both motions. The trial court ruled "[t]here is a genuine issue of material fact that must be presented to the jury on the question of the extent to which a reasonable person would, given her prior mental health issues, and her conduct on the days immediately preceding her attempted suicide."
¶ 36 Viewing the evidence in the light most favorable to Ramey before trial, the trial court correctly denied Knorr's motion for summary judgment. Pre-trial, there was a genuine issue of material fact whether Knorr's mental state on the day of the accident would fall under the sudden mental incapacity exception, assuming Washington would adopt the minority rule. Knorr was previously hospitalized in 1994 for delusional behavior and she experienced many paranoid beliefs in the months preceding the accident. The fact that the trial court granted a CR 50 motion at the close of the evidence at trial does not make its prior denial of summary judgment erroneous in any way.

NEW TRIAL MOTION
¶ 37 Knorr further argues the trial court erred in denying her motion for a new trial under CR 59(a)(8), CR 59(a)(1), and CR 59(a)(9). We disagree.
¶ 38 A court may grant a motion for a new trial when important rights of the moving party are materially affected because substantial justice has not been done. When the trial court's basis for denying or granting a motion for a new trial is based on questions of fact, the ruling will not be disturbed absent a manifest abuse of discretion.[52] When an order is based on questions of law, the standard of review is de novo and not abuse of discretion.[53]
¶ 39 At trial, the court granted a directed verdict in favor of Ramey and ruled as a matter of law that Knorr did not meet the narrow exception of a sudden mental incapacity. Knorr moved for a new trial and the motion was denied. Because the motion for a new trial was based on a question of law, the standard of review is de novo.

CR 59(a)(8)
¶ 40 A motion for a new trial may be granted under CR 59(a)(8) if an error in law occurred at trial and was "objected to at the time by the party making the application."[54]
¶ 41 Knorr argues it was error for the trial court to make a pre-trial ruling that her sudden illness defense presented a question of fact and later at trial grant Ramey's motion for a directed verdict, thus preventing Knorr from arguing her defense before the jury. Knorr timely objected to the ruling that her incapacity was not sudden as a matter of law.
¶ 42 The trial court denied the cross-motions for summary judgment because pre-trial the trial court believed there was a genuine issue of material fact whether Knorr's mental illness affected her ability to conform to the standard of care. After hearing all of the evidence and further reviewing Breunig and Johnson, the trial court concluded there was substantial evidence that Knorr's mental disorder did not meet the very narrow exception of sudden mental incapacity. The trial court further ruled as a matter of law that Washington does not recognize the sudden mental incapacity defense and this court does not recognize the defense. The trial court did not make an error of law in declining to adopt the sudden mental incapacity defense. The defense is not recognized in Washington and there was substantial evidence that Knorr had knowledge and forewarning of her mental disorder and would not fall under the sudden mental incapacity exception.

*323 CR 59(a)(1)

¶ 43 Under CR 59(a)(1), a trial court may grant a verdict and grant a new trial if an irregularity in the proceedings of the court prevented the moving party from receiving a fair trial and materially affected the party's substantial rights.[55]
¶ 44 As stated above, the trial court made no error of law in not adopting a minority rule that is not recognized in Washington and in granting a directed verdict for Ramey. The proceedings were not irregular and Knorr received her day in court and was not denied a fair trial.

CR 59(a)(9)
¶ 45 A motion for a new trial may be granted under CR 59(a)(9) if substantial justice has not been done.[56] Knorr contends that "substantial justice was not done" because she was unable to argue her defense to the jury and was deprived of her day in court.
¶ 46 Knorr's argument is unconvincing. Knorr had her day in court and there was substantial evidence that she did not meet the requirements of the sudden mental incapacity defense.

JURY INSTRUCTIONS
¶ 47 Lastly, Knorr argues the trial court committed reversible error in failing to instruct the jury on the sudden mental incapacity defense and in giving certain jury instructions. Knorr bases this argument on the trial court's alleged error in granting a directed verdict for Ramey and preventing Knorr from arguing her theory of the case to the jury.
¶ 48 A party is entitled to have the jury instructed on his or her theory of the case as long as there is evidence to support the theory.[57] The trial court has discretion whether to give a particular instruction to the jury and the "trial court's refusal to give a requested instruction is reviewed only for abuse of discretion."[58] Where there is substantial evidence to support a theory, a trial court must instruct the jury on that theory.[59]
¶ 49 Relying on Hawkins v. Marshall,[60] Knorr argues the trial court's refusal to instruct the jury on the sudden mental incapacity defense was reversible error because she was prevented from arguing her theory of the case. In Hawkins, the trial court instructed the jury that if they found in plaintiff's favor they must award the entire medical expenses claimed.[61] The court of appeals reversed because the instruction was an "incorrect statement of law, misled the jury, removed the jury's discretion to determine the proper amount of damages, and precluded [defendant] from arguing her theory of the case."[62]
¶ 50 Unlike Hawkins, the trial court did not misstate the law in the instructions to the jury. Sudden mental incapacity generally is not accepted as a defense to negligence and there is substantial evidence that Knorr does not meet the sudden mental incapacity exception. Because it was not error for the trial court to grant a directed verdict for Ramey, the trial court did not abuse its discretion in failing to instruct the jury on the sudden mental incapacity defense. The proposed jury instructions on sudden mental incapacity were properly withheld and the instructions without the defense were properly given.
¶ 51 To summarize, the trial court properly denied Knorr's summary judgment motion because there were then genuine issues of material fact. At the close of the evidence at trial, the court properly granted the CR 50 *324 motion. There was no need to either adopt or reject the Breunig exception in ruling on that motion, and we decline to do either here. The trial court properly refused the instructions proposed by Knorr and the instructions the court gave were proper. The CR 59 motion was properly denied.
¶ 52 We affirm the trial court rulings in all respects.
WE CONCUR: APPELWICK and COLEMAN, JJ.
NOTES
[1] RESTATEMENT (SECOND) OF TORTS § 283B.
[2] Jankee v. Clark County, 235 Wis.2d 700, 612 N.W.2d 297 (2000); Breunig v. American Family Ins. Co., 45 Wis.2d 536, 173 N.W.2d 619 (1970).
[3] Jankee, 235 Wis.2d at 735, 612 N.W.2d 297 (citing Breunig, 45 Wis.2d at 541, 543, 173 N.W.2d 619).
[4] CR 50(a)(1).
[5] Peterson v. Littlejohn, 56 Wash.App. 1, 11-12, 781 P.2d 1329 (1989).
[6] Rhoades v. De Rosier, 14 Wash.App. 946, 948, 546 P.2d 930 (1976).
[7] Peterson, 56 Wash.App. at 11-12, 781 P.2d 1329.
[8] Id.
[9] RESTATEMENT (SECOND) OF TORTS § 283B.
[10] RESTATEMENT (SECOND) OF TORTS § 283B; See Criez v. Sunset Motor Co., 123 Wash. 604, 608, 213 P. 7 (1923); J.A. Bryant, Jr., Liability of Insane Person For His Own Negligence, 49 A.L.R.3d 189 (1973).
[11] RESTATEMENT (SECOND) OF TORTS § 283B; Stephanie I. Splane, Tort Liability of the Mentally Ill in Negligence Actions, 93 YALE L.J. 153, 156 (1983).
[12] RESTATEMENT (SECOND) OF TORTS § 283B; Stephanie I. Splane, Tort Liability of the Mentally Ill in Negligence Actions, 93 YALE L.J. 153, 156 (1983).
[13] RESTATEMENT (SECOND) OF TORTS § 283B; Stephanie I. Splane, Tort Liability of the Mentally Ill in Negligence Actions, 93 YALE L.J. 153, 156-57 (1983).
[14] 45 Wis.2d at 536, 173 N.W.2d 619.
[15] Breunig, 45 Wis.2d at 540, 173 N.W.2d 619.
[16] Id.
[17] Id.
[18] Id. at 541, 173 N.W.2d 619 (emphasis added).
[19] 235 Wis.2d 700, 612 N.W.2d 297.
[20] Jankee, 235 Wis.2d at 735, 612 N.W.2d 297 (citing Breunig, 45 Wis.2d at 541, 543, 173 N.W.2d 619).
[21] Breunig, 45 Wis.2d at 545, 173 N.W.2d 619.
[22] Jankee, 235 Wis.2d at 736, 612 N.W.2d 297 (citing Breunig, 45 Wis.2d at 545, 173 N.W.2d 619).
[23] Jankee, 235 Wis.2d at 735, 612 N.W.2d 297 (quoting Breunig, 45 Wis.2d at 544, 173 N.W.2d 619).
[24] Jankee, 235 Wis.2d at 735, 612 N.W.2d 297.
[25] Breunig, 45 Wis.2d at 543, 173 N.W.2d 619 (emphasis added).
[26] Id.
[27] See Jankee, 235 Wis.2d at 736, 612 N.W.2d 297.
[28] Krause v. General Casualty Co., 192 Wis.2d 763, *5-6, 532 N.W.2d 469 (1995).
[29] Krause, 192 Wis.2d at *6, 532 N.W.2d 469.
[30] Jankee, 235 Wis.2d at 736, n. 12, 612 N.W.2d 297 ("This level of forewarning is acutely apparent for persons who are under the treatment of medication. For instance, epileptics and diabetics are negligent if a foreseeable seizure or incapacitation leads them to cause an accident.").
[31] 221 N.J.Super. 340, 534 A.2d 448 (1987).
[32] Jankee, 235 Wis.2d at 736, 612 N.W.2d 297.
[33] Id.
[34] Id.
[35] Id.
[36] Johnson v. Lambotte, 147 Colo. 203, 204, 363 P.2d 165 (1961).
[37] Breunig, 45 Wis.2d at 543, 173 N.W.2d 619.
[38] Jankee, 235 Wis.2d at 736, 612 N.W.2d 297 (citing Breunig, 45 Wis.2d at 544-45, 173 N.W.2d 619).
[39] Breunig, 45 Wis.2d at 545, 173 N.W.2d 619.
[40] Breunig, 45 Wis.2d at 541, 173 N.W.2d 619.
[41] Jankee, 235 Wis.2d at 735, 612 N.W.2d 297 (citing Breunig, 45 Wis.2d at 541, 543, 173 N.W.2d 619).
[42] Breunig, 45 Wis.2d at 541, 173 N.W.2d 619.
[43] Kaiser v. Suburban Transp. Sys., 65 Wash.2d 461, 466, 398 P.2d 14 (1965).
[44] Id. at 464, 466, 398 P.2d 14.
[45] Id. at 461, 398 P.2d 14.
[46] 112 Wash.2d 636, 771 P.2d 711 (1989).
[47] Sofie, 112 Wash.2d at 649, 771 P.2d 711.
[48] Id. at 648-50, 771 P.2d 711.
[49] Rhoades, 14 Wash.App. at 948, 546 P.2d 930.
[50] CR 56.
[51] Khung Thi Lam v. Global Med. Sys., 127 Wash.App. 657, 661, 111 P.3d 1258 (2005).
[52] Aluminum Co. of Am. v. Aetna Cas. Sur. Co., 140 Wash.2d 517, 537, 998 P.2d 856 (2000).
[53] Schneider v. City of Seattle, 24 Wash.App. 251, 255, 600 P.2d 666 (1979).
[54] CR 59(a)(8).
[55] Marvik v. Winkelman, 126 Wash.App. 655, 663, 109 P.3d 47 (2005).
[56] CR 59(a)(9).
[57] Hizey v. Carpenter, 119 Wash.2d 251, 266, 830 P.2d 646 (1992).
[58] Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996).
[59] Id.
[60] 92 Wash.App. 38, 962 P.2d 834 (1998).
[61] Hawkins, 92 Wash.App. at 41, 962 P.2d 834.
[62] Id. at 45-46, 48, 962 P.2d 834.